UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA  )<br>　　　　　　　　　　　　　　 )<br>v.　　　　　　　　　　　　　　 )　　No. 20-CR-10271<br>　　　　　　　　　　　　　　 )<br>DAVID DEQUATTRO,　　　　　 )<br>　　　　　Defendant　　　　　 )<br>　　　　　　　　　　　　　　 ) | |

## DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO DISMISS

Now comes the defendant David DeQuattro, by and through undersigned counsel, and hereby respectfully submits this Reply to the Government's Opposition to his Motion to Dismiss.

The government's argument against dismissal is entirely predicated on a newfound theory which the Indictment does not so much as mention: namely, co-defendant Cedric Cromwell's alleged "agreement to use his influence as Chairman of the Tribe and President of the Gaming Authority's board of directors to ensure that the board did not terminate the Contract." Dkt. 36 at 5; *see also id.* at 9 (citing this same purported agreement not to "vote to terminate the Contract" as constituting the "official act" required under *McDonnell*). But the government's sole citation in support of this allegation is a paragraph of the Indictment that says nothing at all about a potential termination of the contract. *See* Dkt. 1 at ¶ 17 ("The objects of the conspiracy . . . were for [Cromwell] to use his position and influence as Chairman of the Tribe and President of the Gaming Authority to solicit and accept payments and other things of value from the Company through [Mr. DeQuattro], ***in exchange for favorable action or inaction***

1

***on the Contract*** by the Gaming Authority . . . ." (emphasis added)).

As outlined in detail in Mr. DeQuattro's initial Motion, the only action or inaction by Cromwell contained in the four corners of the Indictment is his allegedly cosigning a series of checks for amounts due to Mr. DeQuattro's Company under the applicable contract. The government does nothing to contest Mr. DeQuattro's argument that this ministerial action was insufficient to constitute the *quid pro quo* required under *Bravo* or the official act required under *McDonnell*. The government's silence on this point should be taken as an implicit concession. Similarly, the government does not suggest any relationship between the payments provided by Mr. DeQuattro and the initial agreement between the Tribe and his Company (which pre-dated Mr. DeQuattro's first alleged payment by more than two months). Again, this silence constitutes an implicit concession that there is no actionable *quid pro quo* in relation to the execution of the contract.

The government's newfound theory cannot forestall dismissal for the simple reason that it lacks any support in the Indictment. The only mention of termination in that document is the simple allegation that the "Contract did not have a termination date" and instead "stated that either party could terminate the Contract for cause with seven days' notice, or 'for convenience' with one month's notice." *Id.* at ¶ 16. The charging document is silent with respect to whether any termination was threatened, discussed, or even contemplated by the Gaming Authority, or whether such possibility was communicated at any time to Mr. DeQuattro or anyone else at the Company. *See McDonnell v. United States*, 136 S. Ct. 2355, 2372 (2016) (holding that official act must relate to "something specific and focused that is 'pending' or 'may by law be brought' before a public official"). Indeed, there is not even any indication that Cromwell had the power

to terminate the contract with the Company. *See id.* at 2369 (holding that definition of official act "conveys something ***within the specific duties of an official's position***—the function conferred by the authority of his office" (emphasis added)); *United States v. Gracie*, 731 F.3d 1, 3 (1st Cir. 2013) (explaining that a *quid pro quo* exists "[w]hen a person ***with the power to do or not do something*** demands a payment from the beneficiary of the exercise of that power as a condition for continuing to do so" (emphasis added)). Such action would require the votes of two other Gaming Authority Board members. Moreover, there is not an allegation in the Indictment that anyone was considering rescinding the contract, that there were grounds to rescind the contract, or that anyone was displeased with the Company's implementation of the contract. In short, the government's new theory, therefore, is not only absent from the Indictment, but also lacking any context capable of supporting a prosecutorial theory that the risk of rescission was so real or foreseeable that payments would be made with the intent to influence such a future contingency.

Again, the only prospective action or inaction by Cromwell alluded to is his cosigning of the checks. After Mr. DeQuattro's Motion made clear the insufficiency of that allegation under the charging statute, the government abruptly attempted to shift course and inject a new theory. But the government's Opposition does not change the fact that the specific allegations set forth in the Indictment do not constitute a crime. For that reason, under the precedents cited in his initial Motion, the charges against Mr. DeQuattro must be dismissed. *See* Dkt. 34 at 5-7.

Permitting the government to abandon the factual predicate specifically outlined in the Indictment would also raise the prospect of an impermissible constructive amendment. "[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against

him." *Stirone v. United States*, 361 U.S. 212, 217 (1960).  This prohibition "exists to preserve the defendant's Fifth Amendment right to indictment by grand jury, to prevent re-prosecution for the same offense in violation of the Sixth Amendment, and to protect the defendant's Sixth Amendment right to be informed of the charges against him."  *United States v. Brandao*, 539 F.3d 44, 57 (1st Cir. 2008).  Constructive amendments are "prejudicial per se and grounds for reversal of a conviction."  *United States v. Bucci*, 525 F.3d 116, 131 (1st Cir. 2008) (citation omitted).  The defense respectfully submits that the government's abrupt change from a theory predicated upon Cromwell's cosigning of checks as the requisite official act to reliance upon the Gaming Authority's mere non-termination of the contract would constitute a constructive amendment.  *See Stirone*, 361 U.S. at 217 (reversing Hobbs Act conviction where the defendant was charged with "interfer[ing] with interstate transportation of sand," but the court permitted evidence of interference with interstate steel shipments).

Here, the perils of constructive amendment have been transformed from potential to real by the government's decision to switch theories.  The twenty-three page Indictment, containing over sixty paragraphs of alleged overt acts, identifies only one action or inaction by Cromwell in his official capacity with the Tribe and/or Gaming Authority: his cosigning of checks to Mr. DeQuattro's Company.  To the extent the government believes the identity of the requisite official act is somehow more ambiguous, such position would implicate the longstanding Constitutional requirement that an indictment apprise the defendant, "with reasonable certainty, of the nature of the accusation against him."  *Russell v. United States*, 369 U.S. 749, 766 (1962) (citation omitted); *see also id.* at 768 ("Far from informing [the defendant] of the nature of the accusation against him, the indictment instead left the prosecution free to roam at large—to shift

its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal."). The Due Process Clause entitles Mr. DeQuattro to fair notice of the charges on which the government will seek to convict him.

For the foregoing reasons, as well as those set forth in his initial Motion, Mr. DeQuattro respectfully requests that the Court dismiss Counts 1, 4, and 5.

Respectfully Submitted,
DAVID DEQUATTRO
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: February 3, 2021

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, February 3, 2021, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.