UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 20-10271-DPW |
| | ) | |
| (1) CEDRIC CROMWELL and | ) | |
| (2) DAVID DEQUATTRO, | ) | |
| | ) | |
| Defendants | ) | |

## UNITED STATES' OPPOSITION TO
## DEFENDANT DAVID DEQUATTRO'S MOTION FOR BILL OF PARTICULARS

The Court should deny defendant David DeQuattro's motion for a bill of particulars

(Doc. No. 55) for the reasons stated in the government's opposition to defendant Cedric

Cromwell's motion for a bill of particulars: the defendants are not entitled to the information

requested. *See* Doc. No. 50, which is incorporated herein by reference.

### RELEVANT PROCEDURAL HISTORY

DeQuattro was indicted on November 12, 2020, and arraigned the following day. *See*

Doc. No. 12.[1]

The government produced automatic discovery to DeQuattro on December 11, 2020. The

cover letter included a detailed list of the produced files. All discovery has been electronic and

searchable. Files produced as part of automatic discovery include, *inter alia*, the FBI reports of

DeQuattro's initial statement to federal agents and his subsequent proffer; DeQuattro's bank

---

[1] A defendant may move for a bill of particulars within 14 days after arraignment or at a later time if the court permits. Fed. R. Crim. P. 7(f). On February 23, 2021, more than fourteen weeks after his arraignment, DeQuattro moved for leave to join and supplement Cromwell's pending motion for a bill of particulars. The Court allowed DeQuattro's motion. Doc. No. 56.

records, phone records, and emails; bank records for Cromwell, One Nation Development, and the entity referred to as the "Company" in the indictment; records produced by the Company President; accounting records and other documents produced by the Company; records produced by the Company's former corporate law firm after DeQuattro signed a privilege waiver; records produced by the Tribe; all records specifically identified in the indictment, including checks, text messages, and emails; records relating to the purchase and delivery of the Bowflex gym, and to Cromwell's stay at the Seaport Boston Hotel; all contracts entered into at any time between the Company and the Tribe or the Gaming Authority; all Company invoices to the Gaming Authority, and payments to the Company, under the Contract; additional files concerning the Contract; records from Cromwell's divorce case in which he made certain representations; and DeQuattro's and the Company's federal tax returns. The government also produced interview summaries for numerous witnesses, as well as transcripts of sworn testimony by seven witnesses, including the persons identified in the indictment as Friend A and Friend B.

On January 4, 2021, the Court endorsed the parties' proposed discovery protective order. Doc. No. 30. On January 15, 2021, the government produced supplemental discovery covered by the protective order. These were files produced by, and bank records of, CM International Consulting LLC, as well as minutes from Mashpee Wampanoag Gaming Authority board meetings.

In response to DeQuattro's requests for supplemental discovery, the government has produced the following, some pursuant to the protective order: the case agent's handwritten notes from DeQuattro's proffer; the transcript of sworn testimony of an eighth witness; an interview summary for yet another witness; Cromwell's emails; certain files produced by the Malaysian

investment firm backing the Tribe's effort to build a casino; and a summary of certain statements made by the Company President.

## ARGUMENT

DeQuattro asks this Court to order the government to provide the same information that Cromwell seeks, and also to identify "(1) the nature, time, place, and manner and means of the official act(s) underlying the bribery charges, and (2) the time, place, and manner and means by which Cromwell communicated any promises, threats, or inducements if any such communication was made that gave rise to the alleged understanding that payments would result in any action or inaction on the contract." Doc. No. 55 at 3-4. In support of his motion, DeQuattro argues that the government has shifted its theory of prosecution; that the "new" theory has "no factual support whatsoever in the Indictment"; that the official act identified in the indictment is "highly general"; and that he needs to know when and where Cromwell communicated any promises, threats, or inducements because such details may support an alibi defense. *Id.* DeQuattro has cited no case law in support of his request.

The Court should deny DeQuattro's motion. The government's theory of prosecution is and has always been what is alleged in the indictment: that Cromwell "use[d] his position and influence as Chairman of the Tribe and President of the Gaming Authority to solicit and accept payments and other things of value from the Company through DeQuattro, in exchange for favorable action or inaction on the Contract by the Gaming Authority, and for DeQuattro to give money and other things of value from the Company to Cromwell in exchange for favorable action or inaction on the Contract by the Gaming Authority." Ind. ¶ 17.[2] The 23-page indictment

_____

[2] To be clear, the government's theory is that DeQuattro and the Company President agreed that the Company would pay the bribes because they feared that, if they did not, the Contract would be at risk. The bribes were paid in exchange for both favorable inaction on the

is detailed, and DeQuattro has received extensive automatic discovery in electronic, searchable

form. Accordingly, he is not entitled to a bill of particulars. *See* United States' Opp. to

Cromwell's Motion to Dismiss Counts 6-10 of the Indictment, or, in the Alternative, for a Bill of

Particulars (Doc. No. 50) at 10-15 (citing cases).

      DeQuattro's insistence that he is entitled to know "the nature, time, place, and manner

and means of the official act(s) underlying the bribery charges" is misplaced for two reasons.

First, DeQuattro is charged under 18 U.S.C. § 666, which does not require proof of an "official

act" – although the indictment in this case alleges official acts. *See* United States' Opp. to

Defendants' Motions to Dismiss Counts One-Five of the Indictment (Doc. No. 36) at 8 (citing

cases). Even if the charges against DeQuattro did require proof of an official act, the government

would not have to prove that Cromwell specified how he would perform it, or that he actually

performed it, or even that he intended to perform it. "[A] public official is not required to

actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or

controversy'; it is enough that the official agree to do so. The agreement need not be explicit, and

the public official need not specify the means that he will use to perform his end of the bargain.

Nor must the public official in fact intend to perform the 'official act,' so long as he agrees to do

so." *McDonnell v. United States*, 136 S. Ct. 2355, 2370-71 (2016) (citing *Evans v. United States*,

504 U.S. 255, 268 (1992)). The government would not even have to prove that Cromwell was

authorized to perform the official act. *See, e.g., Cordaro v. United States*, 933 F.3d 232, 243 (3d

Cir. 2019) (citing *McDonnell*, 136 S. Ct. at 2371). It goes without saying that if the government

---

Contract by the Gaming Authority (*i.e.*, the Gaming Authority did not terminate the Contract or
reduce its scope) and favorable action on the Contract by the Gaming Authority (*i.e.*, the Gaming
Authority continued to authorize payments of the Company's invoices under the Contract, and
Cromwell continued to sign checks to pay those invoices).

need not prove these details at trial, DeQuattro is not entitled to a bill of particulars spelling them out. *See United States v. Sittenfeld*, No. 20-CR-142, 2021 WL 779136, at *7-8 (S.D. Ohio Mar. 1, 2021) (denying motion to dismiss bribery indictment, and noting that such an indictment is sufficient so long as it "'set[s] forth all the elements necessary to constitute the offence'" and includes "some indication of the relevant time period") (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)); *see also United States v. Bravo-Fernandez*, 264 F. Supp. 3d 366, 373 (D.P.R. 2017) ("The government was under no obligation to prove the precise date that the defendants agreed to the bribe."), *rev'd on other grounds*, 913 F.3d 244 (1st Cir. 2019).[3]

Nor is there any merit to DeQuattro's demand for "the time, place, and manner and means by which Cromwell communicated any promises, threats, or inducements if any such communication was made that gave rise to the alleged understanding that payments would result in any action or inaction on the contract." The government need not prove any specific communications between Cromwell and DeQuattro. "The official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods." *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring);

---

[3] The indictment in this case provides far more than just "some indication of the relevant time period." *Sittenfeld*, 2021 WL 779136, at *8. It is replete with details. In Count Four, DeQuattro is charged with paying Cromwell a $10,000 bribe in the form of a check on DeQuattro's personal account on November 13, 2015, which Cromwell solicited on November 12, 2015, in an emailed letter that is quoted in the indictment. Ind. ¶¶ 55-56. In Count Five, DeQuattro is charged with giving Cromwell three bribes that together were worth more than $5,000. The first was a Bowflex Revolution home gym that was delivered on August 5, 2016, to Cromwell's home, where DeQuattro met and paid the seller $1,700 cash. Ind. ¶¶ 64-67. The second was a $4,000 check dated January 12, 2017, on DeQuattro's personal account, which Friend B solicited at Cromwell's direction in text messages to DeQuattro on December 23, 2016, and January 3, 2017, which are quoted in the indictment. Ind. ¶¶ 72-74. The third was Cromwell's stay at the Seaport Boston Hotel on May 19-22, 2017, which Cromwell solicited in a May 15, 2017, text message quoted in the indictment, and for which, on May 18, 2017, the Company paid $1,849.36 of the $2,467.17 invoice. Ind. ¶¶ 80-83.

*see also United States v. McDonough*, 727 F.3d 143, 153 (1st Cir. 2013) ("'evidence of a corrupt agreement in bribery cases is usually circumstantial, because bribes are seldom accompanied by written contracts, receipts or public declarations of intentions'") (quoting *United States v. Friedman*, 854 F.2d 535, 554 (2d Cir. 1988)). "As most bribery agreements will be oral and informal, the question is one of inferences taken from what the participants say, mean and do, all matters that juries are fully equipped to assess." *Id.* (internal quotation marks omitted). What counts are "motives and consequences, not formalities," such as specific communications made in specific ways on specific dates. *Evans*, 504 U.S. at 274 (Kennedy, J., concurring). "[T]he trier of fact is quite capable of deciding the intent with which words were spoken or actions taken as well as the reasonable construction given to them by the official and the payor." *Id.* (Kennedy, J., concurring) (citing *McCormick v. United States*, 500 U.S. 257, 270 (1991)). Because the government need not prove the time, place, manner, or means of any particular communication between Cromwell and DeQuattro, DeQuattro is not entitled to have those details spelled out in a bill of particulars.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court deny David DeQuattro's motion for a bill of particulars.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   */s/ Christine Wichers*
CHRISTINE WICHERS
Assistant U.S. Attorney

**<u>Certificate of Service</u>**

      I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 9, 2021.

*<u>/s/ Christine Wichers</u>*
Christine Wichers