UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) ) ) ) v. ) ) ) No. 20-CR-10271 DAVID DEQUATTRO, ) Defendant ) ) ) | |

**DEFENDANT'S MOTION FOR PRODUCTION OF EXCULPATORY EVIDENCE**

Now comes the defendant David DeQuattro, by and through undersigned counsel, and hereby respectfully requests that this Honorable Court Order the government, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and Local Rule 116.2, to provide information regarding whether or not the Company President's statements to the government indicated that the attorneys consulted regarding the donations underlying the charges in this case provided an opinion approving and/or not prohibiting or discouraging those donations.

On March 9, 2021, the government, in response to a request by undersigned counsel, provided disclosures (in the form of a letter) regarding certain subjects, including political donations, discussed in the Company President's statements to the government. According to the Company President, "Mr. DeQuattro told him that Mr. Cromwell had asked for the six payments . . . as political contributions to Mr. Cromwell's reelection campaign." Mar. 9, 2021 Letter. The letter also recounted the Company President's statement that, "after Mr. DeQuattro relayed Mr. Cromwell's first request for $10,000, [the Company President] replied that he was not familiar with the rules for

1

contributions to tribal political candidates and suggested a call to [the Company's] lawyers at Adler Pollock & Sheehan for advice." Mar. 9, 2021 Letter. One of the lawyers consulted was the Company President's own cousin. The defendant has already made a limited waiver of the attorney-client privilege thus any concerns for privilege that would be in conflict with the government's *Brady* obligations have been obviated.

Mr. DeQuattro stands charged with violating 18 U.S.C. § 666, and conspiring to do the same. These allegations are expressly tied to Mr. DeQuattro's payments to co-defendant Cedric Cromwell, then-Chairman of the Mashpee Wampanoag Tribal Council. Mr. DeQuattro is alleged to have made the first such payment in the amount of $10,000 on July 26, 2014. *See* Dkt. 1 at ¶ 23. The Indictment proceeds to enumerate five subsequent payments in the same amount (and in one instance less) over the course of the next approximately two-and-a-half years. *See id.* at ¶¶ 32, 39, 48, 56, and 74. The government claims that these payments constituted the requisite *quid* provided "in exchange" for Cromwell's "favorable action or inaction" on the Company's Contract with the Tribe (*i.e.*, the *quo*). *Id.* at ¶ 17.

In these circumstances, the requested information goes directly to the heart of the allegations against Mr. DeQuattro. If the Company's law firm expressly endorsed, or even declined to discourage, the first of Mr. DeQuattro's donations, that would constitute powerful evidence of his good-faith belief in the legality of his subsequent actions, and that the payments were therefore not made "corruptly" as required by statute. *See United States v. Greenspan*, 923 F.3d 138, 146 (3d Cir. 2019) ("Advice of counsel is . . . a species of good-faith defense. It negates the mental state required for the crime."); *United States v. Scully*, 877 F.3d 464, 476 (2d Cir. 2017) ("In a fraud case . . . the

2

advice-of-counsel defense is not an affirmative defense . . . . Rather, the claimed advice of counsel is evidence that, if believed, can raise a reasonable doubt in the minds of the jurors about whether the government has proved the required element of the offense that the defendant had an unlawful intent." (citation omitted)). The issue is not whether the defendant can or will raise a full reliance on counsel defense but instead whether the defendant's awareness that the lawyers consulted on the political donation issue did not prohibit or discourage the payments goes directly to negate the *mens rea* element of 18 U.S.C. § 666. *See Stichting v. Schreiber*, 327 F.3d 173, 183 (2d Cir. 2003); *United States v. Gorski*, 36 F. Supp. 3d 256, 267-68 (D. Mass. 2014); *United States v. Impastato*, 543 F. Supp. 2d 569, 579-80 (E.D. La. 2008); *United States v. W.R. Grace*, 439 F. Supp. 2d 1125, 1142 (D. Mont. 2006). The defense respectfully submits that, based on the government's own allegations that the Company President arranged for Mr. DeQuattro to be reimbursed after each and every one of the six alleged payments, *see* Dkt. 1 at ¶¶ 29, 36, 43, 52, 58, and 76, it is highly likely that the attorneys – including his own cousin whose advice he regularly sought and followed – advised him that the payments were lawful and that he communicated that advice to Mr. DeQuattro. *See United States v. Way*, No. 14-CR-00101, 2018 WL 3062159, at *3 (E.D. Cal. June 19, 2018) (holding that government agent's "statements regarding the legality of the products at issue" made to a third-party who "passed along the gist of th[e] statements" to the defendant were "relevant as bearing on defendant's state of mind"). Additionally, the Company President went back to the same attorneys in November 2015 seeking approval of a follow-up donation after the first four donations alleged in the Indictment had already been made. In these circumstances, it is highly likely that the attorneys either approved or certainly did not discourage or prohibit the prior donations. Evidence of just what the

3

Company President told the government in this regard would be exculpatory and would "cast doubt on defendant's guilt as to an[] essential element" of the crimes charged. Local Rule 116.2(a)(1); *see also* Department of Justice Manual 9-5.001(C)(1) ("A prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.").

For the foregoing reasons, Mr. DeQuattro respectfully requests that the government be required to provide information regarding whether or not the Company President's statements to the government indicated that the attorneys consulted regarding the donations at issue in this case provided an opinion approving and/or not prohibiting or discouraging those donations.

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel conferred with counsel for the government and the government opposed the defendant's requested relief.

>
> Respectfully Submitted,
> DAVID DEQUATTRO
> By His Attorney,
>
> **/s/ Martin G. Weinberg**
> Martin G. Weinberg, Esq.
> Mass. Bar No. 519480
> 20 Park Plaza, Suite 1000
> Boston, MA 02116
> (617) 227-3700
> owlmgw@att.net

Dated: March 15, 2021

4

## **CERTIFICATE OF SERVICE**

      I, Martin G. Weinberg, hereby certify that on this date, March 15, 2021, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

                                                        **/s/ Martin G. Weinberg**
                                                        Martin G. Weinberg, Esq.