UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                              )<br>)<br>(1) CEDRIC CROMWELL and        )<br>(2) DAVID DEQUATTRO,           )<br>)<br>Defendants                    ) | Criminal No. 20-10271-DPW |

**UNITED STATES' OPPOSITION TO DEFENDANT DAVID DEQUATTRO'S
MOTION FOR PRODUCTION OF ALLEGEDLY EXCULPATORY EVIDENCE**

Defendant David DeQuattro seeks a Court Order compelling the government to produce the Company President's statements to the government about (a) what legal advice he was given by the Company's lawyers, and (b) what he then relayed to DeQuattro. The government has advised DeQuattro that the requested statements are not exculpatory *Brady* material. DeQuattro, who has the reports of the lawyers' proffers and the transcripts of their testimony, has not articulated – and cannot articulate, in light of the lawyers' statements – why he believes otherwise. Therefore, the Court should deny DeQuattro's motion.

## RELEVANT FACTS

DeQuattro is charged with paying bribes to his codefendant, Cedric Cromwell, the then-Chairman of the Mashpee Wampanoag Indian Tribe, in violation of 18 U.S.C. § 666.

DeQuattro was a shareholder, officer, and director of an architecture firm identified in the Superseding Indictment as the "Company." Superseding Ind. ¶ 9.[1] On May 7, 2014, the

---

[1] The Superseding Indictment added new charges against Cromwell. It did not change the charges against DeQuattro.

Company entered into a contract to serve as the "owner's representative" for the Tribe's project to build a resort and casino in Taunton, Massachusetts. *Id.* ¶ 16. Five of the alleged bribes are $10,000 checks that DeQuattro wrote on July 26, September 1, and October 31, 2014; and January 6 and November 13, 2015. The sixth alleged bribe is a $4,000 check that DeQuattro wrote on January 12, 2017. *Id.* ¶¶ 32, 41, 48, 55, 63, 81.[2] DeQuattro and the Company President, an unindicted co-conspirator, agreed that the Company would reimburse DeQuattro for the bribes. *Id*. ¶ 28(e). They disguised the reimbursement payments by characterizing them as employee bonuses or single paycheck salary increases and recording them on the Company's books as payroll expenses. *Id*. ¶¶ 28(j), 38-39, 45-46, 52-53, 59-60, 65-66, 83-84.

The government has disclosed to DeQuattro certain statements made by the Company President to the government. *See* DeQuattro Mot. (Doc. No. 64) at 1. They include statements that: (a) DeQuattro told the Company President that Cromwell had asked for the six checks as political contributions to Cromwell's reelection campaign; and (b) after DeQuattro told the Company President about Cromwell's first request for $10,000, the Company President said that he was unfamiliar with the rules for contributions to tribal political candidates and suggested a call to the Company's lawyers at Adler Pollock & Sheehan ("APS") for advice. *Id.* at 1-2.[3]

---

[2] The seventh and eighth bribes were a used Bowflex Revolution home gym delivered to Cromwell's residence, and partial payment for his weekend stay at a Boston hotel. Superseding Ind. ¶¶ 71-74, 87-90.

[3] After the events alleged in the Superseding Indictment, the Company President retired and DeQuattro became the sole shareholder, officer, and director of the Company. The Company, through DeQuattro, signed a document waiving the attorney-client privilege as to certain communications between the Company and APS, and waiving any attorney work product protection for records prepared by or at the direction of any APS attorney in connection with those communications. The government then subpoenaed records from APS and spoke with APS lawyers.

Speculating that the information may be exculpatory, DeQuattro wants the government to produce the Company President's statements to the government about (a) what the lawyers told him, and (b) what he then relayed to DeQuattro. *See id.* at 2 ("If the Company's law firm expressly endorsed, or even declined to discourage, the first of Mr. DeQuattro's donations . . . ."); *id.* at 3 ("it is highly likely that the attorneys . . . advised [the Company President] that the payments were lawful and that he communicated that advice to Mr. DeQuattro"); *id.* at 3 ("it is highly likely that the attorneys either approved or certainly did not discourage or prohibit the prior donations").

DeQuattro knows that his hope of exculpatory statements by the Company President is unfounded. DeQuattro has the reports from both lawyers' proffers and the transcripts of their sworn testimony. One lawyer told the government that she advised the Company President not to make the donation, and the other lawyer recalled telling the Company President to think twice and proceed with caution.

## ARGUMENT

The government has informed DeQuattro that the information he seeks is not exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963).

> When the defendant seeks access to specific materials that the government maintains are not discoverable under *Brady*, . . . a trial court may in some instances conduct an *in camera* review of the disputed materials. To justify such a review, the defendant must make some showing that the materials in question could contain favorable, material evidence. This showing cannot consist of mere speculation. Rather, the defendant should be able to articulate with some specificity what evidence he hopes to find in the requested materials, *why he thinks the materials contain this evidence*, and finally, why this evidence would be both favorable to him and material.

*United States v. Prochilo*, 629 F.3d 264, 268-69 (1st Cir. 2011) (citations omitted) (emphasis added). DeQuattro has not made the showing that *Prochilo* requires. He has not articulated – and

cannot articulate, given the lawyers' statements – any basis to believe that the requested statements by the Company President contain exculpatory information.

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny David DeQuattro's motion.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:  */s/ Christine Wichers*
     CHRISTINE WICHERS
     Assistant U.S. Attorney

### Certificate of Service

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 29, 2021.

    */s/ Christine Wichers*
    Christine Wichers