UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) ) ) ) v. ) ) DAVID DEQUATTRO, ) Defendant ) ) ) | No. 20-CR-10271 |

### APPEAL OF AND OBJECTIONS TO MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION FOR BILL OF PARTICULARS

Defendant David DeQuattro, by and through undersigned counsel, pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Crim. P. 59(a), hereby respectfully appeals and objects to Magistrate Judge Bowler's April 2, 2021 Order denying his Motion for Bill of Particulars. As grounds and reasons therefor, Mr. DeQuattro states that the Magistrate Judge "clearly err[ed]" and acted "contrary to law" by holding that the Superseding Indictment, complemented by the government's discovery, provided adequate notice to the defense where those materials do not identify any specific communication between the alleged co-conspirators DeQuattro and Cromwell giving rise to the charged conspiracy or any cognizable official act that Cromwell agreed to take in exchange for payment.

This Court "***must*** . . . modify or set aside any part of" a Magistrate Judge's ruling on a non-dispositive matter "that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a) (emphasis added); *see also* 28 U.S.C. § 636(b)(1)(A). Where, as here, the underlying legal question involves a discretionary judgment call, this standard is akin to abuse of discretion. *See*

1

*United States v. Gioia*, 853 F. Supp. 21, 26 (D. Mass. 1994) ("[A] district judge would have to find the magistrate judge's ruling [on a motion for bill of particulars] to be an abuse of discretion in order to set aside the ruling on the basis that it is 'contrary to law.'"); *Clark v. Homrighous*, 136 F.R.D. 186, 188 (D. Kan. 1991) (referring to abuse of discretion as "the functional equivalent of the clearly erroneous standard of review for a magistrate's order").

"The function of a bill of particulars is," among other things, "to . . . provide the accused with sufficient detail of the charges against him where necessary to the preparation of his defense and to avoid prejudicial surprise at trial." *United States v. Leach*, 427 F.2d 1107, 1110 (1st Cir. 1970). Here, Mr. DeQuattro filed a Motion to Join and Supplement co-defendant Cedric Cromwell's Motion for Bill of Particulars, *see* Dkt. 55, and the Magistrate Judge granted the request to join and supplement, *see* Dkt. 56. Mr. DeQuattro's filing, far from a wide-ranging fishing expedition, reflected just two targeted requests: (1) the time, place, and manner and means by which Cromwell communicated any promises, threats, or inducements if any such communication was made that gave rise to the alleged understanding that payments would result in any action or inaction on the contract, and (2) the nature, time, place, and manner and means of the official act(s) underlying the bribery charges. Neither the Superseding Indictment nor the vast discovery reviewed by the defense to-date provides an answer to either inquiry.

The Superseding Indictment charges Mr. DeQuattro and Cromwell (in Count 1) with ***conspiracy*** to commit federal programs bribery. And "the essence of a conspiracy is an agreement to commit an unlawful act." *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (citation omitted). Each defendant's membership must be proven by his or her own acts and/or statements. *See United States v. Harris*, 733 F.2d 994, 1005 (2d Cir. 1984) (explaining

that "[t]he federal courts follow the bilateral approach to conspiracy under which unless at least two people commit the act of agreeing, no one does" (citation omitted)).

Here, the government answered Mr. DeQuattro's Motion to Dismiss by citing Cromwell's purported "agreement to use his influence as Chairman of the Tribe and President of the Gaming Authority's board of directors to ensure that the board did not terminate the Contract." Dkt. 36 at 5. But this agreement had to be communicated – the government says that Mr. DeQuattro and the Company President (Joseph Beretta) "feared" that, but for the payments, the Contract with the Tribe would "be at risk." Dkt. 60 at 3 n.2. Under the bilateral approach adopted by the federal courts, conspiracy agreements cannot rest alone on one party's subjective fear where the other party – here, Cromwell – does not communicate by act or spoken word. The specific conspiracy charge at issue alleges a *quid pro quo* agreement that payments would be made in "exchange" for the exercise of Cromwell's influence. Dkt. 65 at ¶ 26. The government is right that there is no need for performance by Cromwell – but there is a need for agreement and a communication by Cromwell to Mr. DeQuattro that would evidence a "meeting of the minds." The Superseding Indictment speaks only in generics – *e.g.*, "corruptly solicited and demanded," *id.* at ¶ 119; neither the charging document nor the government discovery particularizes just when, where, or what Cromwell said to meet this essential element of the charge.

The substantive counts against Mr. DeQuattro charge federal programs bribery. The First Circuit held, after considering a circuit split, that a gratuity, gift, or reward for some past action was insufficient to satisfy 18 U.S.C. § 666. *See United States v. Bravo Fernandez*, 722 F.3d 1, 25-26 (1st Cir. 2013). Instead, in the words of Counts 2 and 3, Cromwell was required to

"corruptly solicit[] and demand[]" something of value from Mr. DeQuattro "intending to be influenced and rewarded," Dkt. 65 at ¶ 119, or as charged in Counts 4 and 5, Mr. DeQuattro had to "corruptly" make payments "with intent to influence and reward" some official act, *id.* at ¶ 121. The *quid* of the requisite *quid pro quo* exchange at the core of a § 666 allegation is that Mr. DeQuattro made donations – six totaling over $50,000 – but the *quo* – the specific official acts – are not disclosed. The only specific act by Cromwell in his official capacity with the Tribe and/or the Gaming Authority set forth in the Superseding Indictment is his signing of checks to pay invoices, but there is no allegation that Cromwell expedited or delayed the checks, or that he did anything other than perform a ministerial act. As laid out in detail in Mr. DeQuattro's Motion to Dismiss, Dkt. 34, Cromwell had to do something beyond signing checks or say something to provide a predicate for his joining a conspiracy and he had to say something or do something to support the allegation of a corrupt solicitation and demand. Discovery reveals no such statement to Mr. DeQuattro independent of a request for donations. In some cases, the requisite communication can be by actions rather than words. But here the charge is based on inaction – the fear that absent payment Cromwell would put the Contract at risk. From the face of the Indictment (setting aside its generalizations) and the discovery, Cromwell did nothing to cause that fear. The Contract was executed prior to any alleged payments. There is no allegation that payments were discussed or promised prior to the Contract's execution, no evidence or allegation that the Contract was ever at risk, no evidence or allegation that the rescinding of the contract was ever being considered by the Tribe or its Gaming Authority (of which Cromwell was one of five voting members), and no evidence or allegation that the payments for invoices which went through an elaborate system of checks and balances were ever expedited or delayed

by Cromwell.  The absence of any allegation of communicative conduct by Cromwell creates a void in the alleged two-sided *quid pro quo* conspiracy.

In cases involving political contributions, the obligation to prove the charged demand or agreement is heightened.  In this context, the allegations must support an "explicit" *quid pro quo*.  *See* Dkt. 34 at 10-11 (citing *McCormick v. United States*, 500 U.S. 257, 273 (1991)).  As the *McCormick* Court explained, "[m]oney is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done."  *McCormick*, 500 U.S. at 272.  To avoid criminalizing "conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures," the Court imposed a heightened requirement in cases predicated upon campaign contributions: the government must allege and ultimately prove that the contributions were "made in return for an ***explicit*** promise or undertaking by the official to perform or not to perform an official act."  *Id.* at 272-73 (emphasis added).  This heightened standard underscores the need for a bill of particulars given the absence of any disclosure as to just what Cromwell said to Mr. DeQuattro.

The government should also be required to tell the defense when any alleged communication by Cromwell occurred.  The paucity of information provided to-date makes it impossible for Mr. DeQuattro to comply with the government's demand to disclose any intention to offer an alibi defense.  *See* Dkt. 55 at 3.

If the government is aware of no such communication between Cromwell and Mr. DeQuattro, it can simply say so.  But to spring a surprise on this point at trial is incompatible with the obligation of the sovereign to provide every citizen charged with a crime with basic

notice.  Here, the requested information goes to the essential elements of the charged *quid pro quo* bribery scheme.  Mr. DeQuattro's requests are narrowly limited to that basic notice requirement.  The limited nature of Mr. DeQuattro's requests and the lack of relevant information provided to-date by the government distinguish the cases relied upon by the Magistrate Judge.  *See United States v. Sepulveda*, 15 F.3d 1161, 1193 (1st Cir. 1993) ("Neither appellant convincingly relates a concrete instance of inability to prepare, untenable surprise, or other cognizable prejudice stemming from the trial court's refusal to mandate further particulars."); *United States v. Poulin*, 588 F. Supp. 2d 64, 69 (D. Me. 2008) (noting, in child pornography case, that the government provided a "detailed spreadsheet of what it considered to be the actionable footage").[1]

The centerpiece of this case is a *quid pro quo* bribery conspiracy allegation that requires an agreement with alleged co-conspirator Cromwell.  In order for the government to sustain this charge, Cromwell must have said or done something to promise an official act, or at the very least some conduct involving the Contract, in exchange for the payments at issue which the defense contends were good-faith political donations.  As the situation currently stands, Mr. DeQuattro can only guess as to this pivotal underpinning of the case against him.  A bill of particulars is, accordingly, required.

                                                        Respectfully Submitted,
                                                        DAVID DEQUATTRO
                                                        By His Attorney,

---

[1] The third case cited by the Magistrate Judge dealt only with the facial sufficiency of the indictment and did not consider a request for bill of particulars.  *See United States v. Savarese*, 686 F.3d 1, 6-8 (1st Cir. 2012).

                                       **/s/ Martin G. Weinberg**
                                       Martin G. Weinberg, Esq.
                                       Mass. Bar No. 519480
                                       20 Park Plaza, Suite 1000
                                       Boston, MA 02116
                                       (617) 227-3700
                                       owlmgw@att.net

Dated: April 5, 2021

## CERTIFICATE OF SERVICE

     I, Martin G. Weinberg, hereby certify that on this date, April 5, 2021, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

                                         **/s/ Martin G. Weinberg**
                                       Martin G. Weinberg, Esq.