UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 20-10271-DPW |
| | ) | |
| (1) CEDRIC CROMWELL and | ) | |
| (2) DAVID DEQUATTRO, | ) | |
| | ) | |
| Defendants | ) | |

## **GOVERNMENT'S PROPOSED JURY INSTRUCTIONS**

Pursuant to Fed. R. Crim. P. 30, the United States of America respectfully requests that the Court give the following jury instructions in addition to instructions that the Court typically gives in criminal cases, including but not limited to the following First Circuit pattern instructions:

- 2.01: Stipulations

- 2.03: Impeachment by Prior Inconsistent Statement

- 2.07: Weighing the Testimony of an Expert Witness

- 2.08: Caution as to Cooperating Witness/Immunized Witness

- 2:12: Missing Witness

- 2:19: Character Witness

The government reserves the right to supplement, modify, or withdraw these instructions in light of the requests, if any, filed by the defendants, and the evidence presented at trial.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By: /s/ Christine Wichers
Christine Wichers
Jared Dolan
Assistant U.S. Attorneys

## Certificate of Service

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 6, 2021.

/s/ Christine Wichers
Christine Wichers

**NOT ALL AVAILABLE EVIDENCE NEED BE PRESENTED**[1]

Although the Government is required to prove a defendant guilty beyond a reasonable doubt, the Government is not required to present all possible evidence related to the case or to produce all possible witnesses who might have some knowledge about the facts of the case. In addition, as I have explained, a defendant is not required to present any evidence or produce any witnesses.

---

[1] *Third Circuit Pattern Criminal Jury Instructions* § 3.05.

## CHARTS AND SUMMARIES[2]

Charts and summaries prepared by the Government have been admitted into evidence and were shown to you during the trial for the purpose of explaining facts that are contained in other documents. You may consider the charts and summaries as you would any other evidence admitted during the trial and give them such weight or importance, if any, as you feel they deserve.

---

[2] 1A O'MALLEY, GRENIG, & LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 14:02 (6th ed. 2008).

## CONSPIRACY TO COMMIT FEDERAL PROGRAMS BRIBERY
## COUNT 1
## 18 U.S.C. § 371[3]

Mr. Cromwell and Mr. DeQuattro are each charged in Count 1 with conspiring to commit bribery in connection with Mr. Cromwell's role as an agent for an Indian tribal government that received federal funds. Such activity is a violation of federal law.

You must consider the facts and circumstances as you find in the evidence regarding Mr. Cromwell and Mr. DeQuattro separately. Your decision as to one defendant does not necessarily mean that you will reach the same decision as to the other.

For you to find either defendant guilty of conspiracy to commit federal programs bribery, you must find that the Government has convinced you beyond a reasonable doubt of the following:

> First, that the agreement specified in the indictment, and not some other agreement, existed between at least two people to commit federal programs bribery;

> Second, that the defendant willfully joined in that agreement;

> Third, that one of the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy.

A conspiracy is an agreement, spoken or unspoken. The conspiracy does not have to be a formal agreement or plan in which everyone involved sat down together and worked out all the details.

But the Government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime. Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and

---

[3] *First Circuit Pattern Criminal Jury Instructions* § 4.18.371(1) (updated May 9, 2018).

interests, does not necessarily establish proof of the existence of a conspiracy, but you may consider such factors.

To act **"willfully"** means to act voluntarily and intelligently and with the specific intent that the underlying crime be committed—that is to say, with bad purpose, either to disobey or disregard the law—not to act by ignorance, accident, or mistake. The Government must prove two types of intent beyond a reasonable doubt before the defendant can be said to have willfully joined the conspiracy: an intent to agree, and an intent, whether reasonable or not, that the underlying crime be committed. Mere presence at the scene of a crime is not alone enough, but you may consider it among other factors. Intent may be inferred from the surrounding circumstances.

Proof that the defendant willfully joined in the agreement must be based upon evidence of his own words and/or actions. You need not find that the defendant agreed specifically to or knew about all the details of the crime, or knew every other co-conspirator, or that he participated in each act of the agreement or played a major role, but the Government must prove beyond a reasonable doubt that he knew the essential features and general aims of the venture. Even if the defendant was not part of the agreement at the very start, he can be found guilty of conspiracy if the Government proves that he willfully joined the agreement later. On the other hand, a person who has no knowledge of a conspiracy, but simply happens to act in a way that furthers some object or purpose of the conspiracy, does not thereby become a conspirator.

An overt act is any act knowingly committed by one or more of the conspirators in an effort to accomplish some purpose of the conspiracy. Only one overt act has to be proven. The Government is not required to prove that the defendant personally committed or knew about the

overt act. It is sufficient if one conspirator committed one overt act at some time during the period of the conspiracy.

The Government does not have to prove that the conspiracy succeeded or was achieved. The crime of conspiracy is complete upon the agreement to commit the underlying crime and the commission of one overt act.

**FEDERAL PROGRAMS BRIBERY**
**COUNTS 2-3**
**18 U.S.C. § 666(a)(1)(B)**

Mr. Cromwell is charged in Counts 2 and 3 with soliciting, demanding, accepting, and agreeing to accept bribes from the Company, through Mr. DeQuattro, while Mr. Cromwell was acting as an agent of an Indian tribal government that received federal funds. Such activity is a violation of federal law.

Count Two concerns Mr. DeQuattro's $10,000 check dated November 13, 2015 payable to One Nation Development.

Count Three concerns three items: (a) the Bowflex Revolution home gym delivered to Mr. Cromwell on or about August 5, 2016, (b) Mr. DeQuattro's $4,000 check dated January 12, 2017 payable to CM International, and (c) the Company's partial payment on or about May 18, 2017 of the Seaport Boston Hotel bill for Mr. Cromwell's stay at the hotel.

You must consider these two Counts and the facts and circumstances you find in the evidence regarding each Count separately. Your decision as to one of the Counts does not necessarily mean that you will reach the same decision with respect to the other.

For you to find Mr. Cromwell guilty of federal programs bribery, you must find that the Government has convinced you beyond a reasonable doubt of the following[4]:

> <u>First</u>, that at the time alleged in the indictment, Mr. Cromwell, as Chairman of the Mashpee Wampanoag Tribe, was an agent of an Indian tribal government;
>
> <u>Second</u>, that the Mashpee Wampanoag Tribe received benefits of more than $10,000 under any Federal program involving a grant or other assistance, in the one-year period during which the alleged bribery took place;

---

[4] *Seventh Circuit Pattern Criminal Jury Instructions* for 18 U.S.C. § 666(a)(1)(B); *Third Circuit Pattern Criminal Jury Instructions*, § 6.18.666A1B-2; *United States v. Correia*, No. 18-CR-10364-DPW, Doc. No. 222 (May 11, 2021).

<u>Third</u>, that Mr. Cromwell solicited, demanded, accepted, or agreed to accept something of value from Mr. DeQuattro;

<u>Fourth</u>, that Mr. Cromwell acted corruptly with the intent to be influenced or rewarded in connection with his role as President of the Mashpee Wampanoag Tribal Gaming Authority and its contract with the Company; and

<u>Fifth</u>, that the value of the business, transaction, or series of transactions to which the payments related was at least $5,000.

A tip or a gratuity is not a bribe.[5]  Instead, for you to find Mr. Cromwell guilty of bribery, you must find that he and Mr. DeQuattro agreed to a quid pro quo.[6]  I will explain the term "quid pro quo" a little later.

The fifth element the government must prove beyond a reasonable doubt is that the value of the business, transaction, or series of transactions to which the alleged bribe related was at least $5,000. The government is not required to prove that Mr. Cromwell received at least $5,000. It is the value of the business, transaction, or series of transactions that the alleged bribe was intended to influence or reward that is important for the purposes of this element.[7]

---

[5] *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013); *see also United States v. Correia*, No. 18-CR-10364-DPW, Tr. of Jury Trial Day 14 (May 10, 2021), at 135 ("This is not a tip, not a gratuity. We're talking about . . . quid pro quo. This for that.") (instruction on extortion under color of official right).

[6] *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999); *United States v. McDonough*, 727 F.3d 143, 152-53 (1st Cir. 2013); *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013).

[7] *Third Circuit Pattern Criminal Jury Instructions*, § 6.18.666A1B-2; *United States v. Acevedo-Hernandez*, 898 F.3d 150, 162 (1st Cir. 2018) ("[T]he transactional element requirement of $5,000 'refers to the value of the "business" or "transaction" sought to be influenced by the bribe,' and not to the value of the bribe itself.") (quoting *United States v. Fernandez*, 722 F.3d 1, 12-13 (1st Cir. 2013)).

For you to find the fifth element as to Count Two, you must find that Mr. DeQuattro's $10,000 check dated November 13, 2015 payable to One Nation Development related to ongoing business totaling at least $5,000 between the Company and the Mashpee Wampanoag Tribal Gaming Authority under their contract.

Count Three alleges that Mr. Cromwell solicited, demanded, accepted, or agreed to accept a bribe consisting of a stream of benefits. To find the fifth element as to Count Three, you must find that the Bowflex gym, Mr. DeQuattro's $4,000 check, and/or the partly paid hotel bill related to ongoing business totaling at least $5,000 between the Company and the Mashpee Wampanoag Tribal Gaming Authority under their contract.[8]

---

[8] *United States v. Lopez-Cotto*, 884 F.3d 1, 8 (1st Cir. 2018) ("When a defendant is indicted on the stream of benefits approach, the prosecution must prove an agreement for the ongoing stream of benefits rather than an agreement for stand-alone bribes. The prosecution need not, however, link the value of the government business conferred to any particular benefit received by the official. Rather, the government must show that, in the aggregate, under the ongoing scheme, the government business conferred had a value of at least $5,000."); *Woodward v. United States*, 905 F.3d 40, 46 (1st Cir. 2018); *United States v. Ganim*, 510 F.3d 134, 147 (2d Cir. 2007) ("[R]equiring a jury to find a quid pro quo, as governing law does, ensures that a particular payment is made in exchange for a *commitment* to perform official acts to benefit the payor in the future. Once the quid pro quo has been established, however, the specific transactions comprising the illegal scheme need not match up this for that. While it frequently will be true that particular bribes or extorted payments are linked at the time of the corrupt agreement to particular official acts, that will not always be the case—for example, because the opportunity to undertake the requested act has not arisen, or because the payment is one of a series to ensure an ongoing commitment to perform acts to further the payor's interests.") (Sotomayor, J.) (emphasis in original).

**FEDERAL PROGRAMS BRIBERY**
**COUNTS 4-5**
**18 U.S.C. § 666(a)(2)**

Mr. DeQuattro is charged in Counts 4 and 5 with giving, offering, and agreeing to give bribes to Mr. Cromwell, on behalf of the Company, while Mr. Cromwell was acting as an agent of an Indian tribal government that received federal funds. Such activity is a violation of federal law.

Count 4 concerns Mr. DeQuattro's $10,000 check dated November 13, 2015 payable to One Nation Development.

Count 5 concerns three items: (a) the Bowflex Revolution home gym delivered to Mr. Cromwell on or about August 5, 2016, (b) Mr. DeQuattro's $4,000 check dated January 12, 2017 payable to CM International, and (c) the Company's partial payment on or about May 18, 2017 of the Seaport Boston Hotel bill for Mr. Cromwell's stay at the hotel.

You must consider these two Counts and the facts and circumstances you find in the evidence regarding each Count separately. Your decision as to one of the Counts does not necessarily mean that you will reach the same decision with respect to the other.

For you to find Mr. DeQuattro guilty of federal programs bribery, you must find that the Government has convinced you beyond a reasonable doubt of the following[9]:

> <u>First</u>, that at the time alleged in the indictment, Mr. Cromwell, as Chairman of the Mashpee Wampanoag Tribe, was an agent of an Indian tribal government;

---

[9] *Seventh Circuit Pattern Criminal Jury Instructions* for 18 U.S.C. § 666(a)(2); *Third Circuit Pattern Criminal Jury Instructions*, §§ 6.18.666A2, 6.18.66A2-2.

<u>Second</u>, that the Mashpee Wampanoag Tribe received benefits of more than $10,000 under any Federal program involving a grant or other assistance, in the one-year period during which the alleged bribery took place;

<u>Third</u>, that Mr. DeQuattro gave, offered, or agreed to give something of value to Mr. Cromwell or any other person;

<u>Fourth</u>, that Mr. DeQuattro acted corruptly with the intent to influence or reward Mr. Cromwell in connection with his role as President of the Mashpee Wampanoag Tribal Gaming Authority and its contract with the Company; and

<u>Fifth</u>, that the value of the business, transaction, or series of transactions to which the payments related was at least $5,000.

A tip or a gratuity is not a bribe.[10] Instead, for you to find Mr. DeQuattro guilty of bribery, you must find that he and Mr. DeQuattro agreed to a quid pro quo.[11] I will explain the term "quid pro quo" a little later.

The fifth element the government must prove beyond a reasonable doubt is that the value of the business, transaction, or series of transactions to which the alleged bribe related was at least $5,000. The government is not required to prove that Mr. DeQuattro paid at least $5,000. It is the value of the business, transaction, or series of transactions that the alleged bribe was intended to influence or reward that is important for the purposes of this element.[12]

---

[10] *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013); *see also United States v. Correia*, No. 18-CR-10364-DPW, Tr. of Jury Trial Day 14 (May 10, 2021), at 135 ("This is not a tip, not a gratuity. We're talking about . . . quid pro quo. This for that.") (instructing on extortion under color of official right).

[11] *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404-05 (1999); *United States v. McDonough*, 727 F.3d 143, 152-53 (1st Cir. 2013); *United States v. Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013).

[12] *Third Circuit Pattern Criminal Jury Instructions*, § 6.18.666A1B-2; *United States v. Acevedo-Hernandez*, 898 F.3d 150, 162 (1st Cir. 2018) ("[T]he transactional element requirement of $5,000 'refers to the value of the "business" or "transaction" sought to be influenced by the bribe,' and not to the value of the bribe itself.") (quoting *United States v. Fernandez*, 722 F.3d 1,

For you to find the fifth element on Count Four, you must find that Mr. DeQuattro's $10,000 check dated November 13, 2015 payable to One Nation Development related to ongoing business totaling at least $5,000 between the Company and the Mashpee Wampanoag Tribal Gaming Authority under their contract.

Count Five alleges that Mr. DeQuattro gave, offered, or agreed to give a bribe consisting of a stream of benefits. To find the fifth element as to Count Five, you must find that the Bowflex gym, Mr. DeQuattro's $4,000 check, and/or the partly paid hotel bill related to ongoing business totaling at least $5,000 between the Company and the Mashpee Wampanoag Tribal Gaming Authority under their contract.[13]

---

12-13 (1st Cir. 2013)).

[13] *United States v. Lopez-Cotto*, 884 F.3d 1, 8 (1st Cir. 2018) ("When a defendant is indicted on the stream of benefits approach, the prosecution must prove an agreement for the ongoing stream of benefits rather than an agreement for stand-alone bribes. The prosecution need not, however, link the value of the government business conferred to any particular benefit received by the official. Rather, the government must show that, in the aggregate, under the ongoing scheme, the government business conferred had a value of at least $5,000."); *Woodward v. United States*, 905 F.3d 40, 46 (1st Cir. 2018); *United States v. Ganim*, 510 F.3d 134, 147 (2d Cir. 2007) ("[R]equiring a jury to find a quid pro quo, as governing law does, ensures that a particular payment is made in exchange for a *commitment* to perform official acts to benefit the payor in the future. Once the quid pro quo has been established, however, the specific transactions comprising the illegal scheme need not match up this for that. While it frequently will be true that particular bribes or extorted payments are linked at the time of the corrupt agreement to particular official acts, that will not always be the case—for example, because the opportunity to undertake the requested act has not arisen, or because the payment is one of a series to ensure an ongoing commitment to perform acts to further the payor's interests.") (Sotomayor, J.) (emphasis in original).

**EXTORTION**
**(As Conspiracy)**
**COUNT 6**
**and**
**(As Substantive Crime)**
**COUNTS 7-10**
**18 U.S.C. § 1951**[14]

Mr. Cromwell is accused in Counts 6, 7, 8, 9, and 10 of violating the federal statute

making illegal the commission of extortion under color of official right by obstructing, delaying,

or affecting commerce.

The charges contained in these Counts constitute two different theories concerning how

the charged extortion violated federal law. Counts 7, 8, 9, and 10 charge Mr. Cromwell with the

substantive crime of extortion. Count 6 charges Mr. Cromwell with being part of a conspiracy to

commit the substantive crime of extortion.

You must consider each of these Counts and the facts and circumstances you find in the

evidence regarding each separately. Your decision as to any one of these Counts does not

necessarily mean that you will reach the same decision with respect to any other of these Counts.

Because all of these Counts turn on the substantive crime of extortion, I will outline the

elements of that crime as Charged in Counts 7, 8, 9, and 10 before giving further instructions

regarding the crime of conspiracy to extort as charged in Count 6.

For you to find Mr. Cromwell guilty of the **substantive crime of extortion under color**

**of official right**, the Government must prove all of the following beyond a reasonable doubt:

First, that Mr. Cromwell knowingly and willfully obtained property from the Company
with the consent of Mr. DeQuattro and the Company President;

Second, that Mr. Cromwell did so by means of extortion under color of official right; and

---

[14] *First Circuit Pattern Criminal Jury Instructions* § 4.18.1951 (updated June 24, 2019); *United States v. Correia*, No. 18-CR-10364-DPW, Doc. No. 222 (May 11, 2021).

<u>Third</u>, that the extortion affected interstate commerce.

The term **"extortion"** means the obtaining of property from another with his consent under circumstances in which that consent was obtained under color of official right.

The phrase **"extortion under color of official right"** requires the Government to prove beyond a reasonable doubt that Mr. Cromwell obtained property to which he was not entitled, and knew he was obtaining the property in return for taking or withholding an official act as President of the Mashpee Wampanoag Tribal Gaming Authority.[15]  This is called a quid pro quo, a term that I will explain in greater detail shortly.

The government is not required to prove that Mr. Cromwell made any specific threat or used force or fear to cause Mr. DeQuattro to part with the property that the indictment alleges Mr. Cromwell obtained by extortion under color of right. However, the government must prove beyond a reasonable doubt that Mr. Cromwell knowingly and deliberately used his official position in order to obtain something of value to which he had no right.[16]

---

[15] *McCormick v. United States*, 500 U.S. 257, 273 (1991) ("[A] public official may not demand payment as inducement for the promise to perform (or not to perform) an official act.") (internal quotation marks omitted); *United States v. Gracie*, 731 F.3d 1, 3 (1st Cir. 2013) ("When a person with the power to do or not do something demands a payment from the beneficiary of the exercise of that power as a condition for continuing to do so, the payment is [a bribe]."); *United States v. Silver*, 948 F.3d 538, 549 (2d Cir. 2020) ("What matters is that the official manifested a willingness to take payment for official action or inaction."), *cert. denied*, 141 S. Ct. 656 (2021); *United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) (same); *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998) (same).

[16] *United States v. Buffis*, 867 F.3d 230, 235 (1st Cir. 2017) ("where the government presents evidence that the government official received a payment under color of official right, it need not prove that the official induced the payment through fear"); *United States v. Turner*, 684 F.3d 244, 255 (1st Cir. 2012) (finding no error in the following instruction: "The Government does not need to show that Mr. Turner made some specific threat or used force or fear to cause a person to tender the money that the Indictment alleges he obtained."); *Third Circuit Pattern Criminal Jury Instructions*, § 6.18.1951-6.

The term **"interstate commerce"** means commerce between any point in a state and any point outside the state. It is only necessary that the Government prove beyond a reasonable doubt that there is a realistic probability that the acts committed by Mr. Cromwell as charged in the indictment had some slight or minimal effect on interstate commerce. It is not necessary for you to find that Mr. Cromwell knew or intended that his actions would affect interstate commerce.

Mr. Cromwell can be found to have acted **"knowingly"** if he was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident.

Mr. Cromwell can be found to have acted **"willfully"** if he acted voluntarily and intentionally and with the specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done; that is to say, he acted with bad purpose either to disobey or to disregard the law.

For you to find Mr. Cromwell guilty of the crime of **conspiracy to commit extortion under color of official right**, as charged in Count 6, the Government must prove the following beyond a reasonable doubt:

> <u>First</u>, that the agreement specified in Count 6, and not some other agreement, existed between Mr. Cromwell and at least one other person;

> <u>Second</u>, that the object of that agreement was to commit extortion under color of official right; and

> <u>Third</u>, that Mr. Cromwell willfully joined in that agreement.

A conspiracy is an agreement, spoken or unspoken. The conspiracy does not need to have a formal agreement or plan in which everyone involved sat down together and worked out all the details.

A person may be a conspirator even if he is the object of the intended extortion. In other words, a defendant may be convicted of conspiracy to commit extortion based on proof that he entered into an agreement that had as its objective the obtaining of property from another conspirator with his consent and under color of official right. The government has no obligation to demonstrate that each conspirator agreed personally to commit, or was even capable of committing, the substantive offense of extortion. Instead, it is sufficient for the Government to prove that the conspirators agreed that extortion be committed by a member of the conspiracy who was capable of committing it.[17]

But the Government must prove beyond a reasonable doubt that those who agreed shared a general understanding about the object of their agreement. Mere similarity of conduct among various people, or the fact that they may have associated with each other or discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. But you may consider such factors, if you find them, as evidence of whether an agreement necessary to constitute a conspiracy existed.

The Government does not need to prove that the conspiracy succeeded or that its object was achieved. The crime of conspiracy to commit extortion under color of official right is completed upon the agreement to commit the underlying crime of extortion. Of course, the commission of the underlying crime of extortion may be evidence that a conspiracy to achieve that object existed between Mr. Cromwell and one or more other persons.

The term **"willfully"** in the context of conspiracy means that the Government must prove that Mr. Cromwell acted voluntarily and intentionally and with the specific intent that the

---

[17] *First Circuit Pattern Criminal Jury Instructions* § 4.18.1951, Comment (5) (updated June 24, 2019); *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016).

underlying crime of extortion under color of official right be committed—that is to say, with bad purpose, either to disobey or disregard the law, and not by ignorance, accident, or mistake.

The Government must prove two types of intent beyond a reasonable doubt to convince you that Mr. Cromwell willfully joined the conspiracy charged in Count 6: an intent to agree, and an intent that the underlying crime of extortion under color of official right be committed.

Proof beyond a reasonable doubt that Mr. Cromwell willfully joined the agreement charged may be based on his own words and actions and on any other evidence I have permitted to be admitted in this case. As is always the case, you may also use circumstantial evidence in considering whether the Government has met its burden of proof beyond a reasonable doubt concerning the conspiracy charged in Count 6.

## QUID PRO QUO

As I have said, for you to find either defendant guilty of bribery, or for you to find Mr. Cromwell guilty of extortion under color of official right, you must find that the Government has convinced you beyond a reasonable doubt that Mr. Cromwell and Mr. DeQuattro agreed to a quid pro quo. This means that the Government must prove that Mr. DeQuattro gave something of value to Mr. Cromwell, directly or indirectly, with the understanding that Mr. Cromwell would perform or not perform an official act in his role as President of the Mashpee Wampanoag Tribal Gaming Authority.[18]

The term **"official act"** means any decision or action on any question, matter, cause, suit, proceeding, or controversy, which may at any time be pending, or which may by law be brought before any public official in his official capacity or place of trust or profit. An official act does not need to be specifically described in any law, rule, or job description. But it must involve the formal exercise of governmental power, and it must be something specific and focused. The "official act" that the Government alleges Mr. Cromwell agreed to perform or not perform was using his official position and authority as the President of the Mashpee Wampanoag Tribal Gaming Authority to protect the Company's contract from termination by the Gaming Authority.[19]

---

[18] *United States v. McDonough*, 727 F.3d 143, 152 (1st Cir. 2013) (quoting *United States v. Brewster*, 408 U.S. 501, 526 (1972); *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404-05 (1999)).

[19] *McDonnell v. United States*, 136 S. Ct. 2355, 2358, 2360 2369 (2016); *see also Third Circuit Pattern Criminal Jury Instructions*, § 6.18.201B1-2 ("The term 'official act' includes the decisions or actions generally expected of the public official. These decisions or actions do not need to be specifically described in any law, rule, or job description . . . .").

The Government does not have to prove that Mr. Cromwell intended to perform or not perform the official act, but it must prove that Mr. Cromwell conveyed to Mr. DeQuattro his agreement to do so.[20]  Similarly, the government does not have to prove that Mr. Cromwell in fact performed or did not perform the official act.[21]

The Government does not have to prove that Mr. Cromwell had the authority to perform or not perform the official act.[22]  But the Government must prove that Mr. Cromwell in his

---

[20] *United States v. Turner*, 684 F.3d 244, 255 (1st Cir. 2012) (finding no error in the following instruction: "The Government does not have to prove that the defendant had the specific intent to take the official action at the time the payment was made, but the Government must prove that he intended to accept the payment fully knowing that it was being tendered to take such official action."); *United States v. Silver*, 948 F.3d 538, 549 (2d Cir. 2020) ("As *Evans* illustrates, the official's actual intent is of no moment. What matters is the intent the official conveys to the payor—*i.e.*, that he will take or refrain from taking certain official action in return for payment. Significantly, there is no requirement that the official actually intend to follow through on his commitment. What matters is that the official manifested a willingness to take payment for official action or inaction.") (citing *Evans v. United States*, 504 U.S. 255, 266 (1992)), *cert. denied*, 141 S. Ct. 656 (2021).

[21] *Evans v. United States*, 504 U.S. 255, 268 (1992) ("the offense is completed at the time when the public official receives a payment in return for his agreement to perform specific official acts; fulfillment of the quid pro quo is not an element of the offense"); *United States v. Turner*, 684 F.3d 244, 254 (1st Cir. 2012) (finding no error in the following instruction: "What the Government must prove is that Mr. Turner received a payment he was not entitled to receive with knowledge that the payment was provided to him in exchange for some official act. It is not necessary for the Government to show that that act was actually taken or actually occurred."); *Third Circuit Pattern Criminal Jury Instructions*, § 6.18.666A1B-2.

[22] *United States v. Turner*, 684 F.3d 244, 254-55 (1st Cir. 2012) (finding no error in the following instruction: "The Government does not have to establish that the defendant had the ultimate authority to guaranty or deny or influence actions such as the issuance of a liquor license all by himself, or to schedule or cancel City Council hearings on his own or to pass City Council resolutions on his own. But the Government must establish that the defendant in his official capacity had the power to facilitate government business, and it was that power, that power to facilitate, that he was paid to exercise."); *United States v. Gee*, 432 F.3d 713, 715 (7th Cir. 2005) (government need not prove that the agent had unilateral control over the transaction; influence is sufficient); *United States v. Plaskett*, 355 F. App'x 639, 643 (3d Cir. 2009) (finding no error in the following instruction: "It is not even necessary that the defendant had the

official capacity had the power to influence Gaming Authority decisions, and it was that influence which he was paid to exercise.[23]

A quid pro quo agreement need not be formal. Bribes are seldom accompanied by written contracts, receipts, or public declarations of intentions. A quid pro quo agreement need not be written or spoken. It is not a requirement that specific words, or indeed any words, be used. A quid pro quo agreement may be implied from the parties' actions and conduct.[24]

---

authority to perform the act sought"); *Third Circuit Pattern Criminal Jury Instructions*, § 6.18.666A2-2; *Modern Fed. Criminal Jury Instructions*, Instruction 16-6 ("It is not necessary that the public official even had the power or authority to perform the act that the defendant sought.").

[23] *Id.*

[24] *Evans v. United States*, 504 U.S. 255, 274 (1992) ("The official and the payor need not state the quid pro quo in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. The inducement from the official is criminal if it is express or if it is implied from his words and actions, so long as he intends it to be so and the payor so interprets it.") (Kennedy, J., concurring); *United States v. McDonough*, 727 F.3d 143, 153 (1st Cir. 2013) ("bribes are seldom accompanied by written contracts, receipts or public declarations of intentions") (internal quotation marks omitted); *id.* at 155 ("a quid pro quo or reciprocity is necessary to support the conviction, but . . . the agreement may be implied from the official's words and actions"); *United States v. Terry*, 707 F.3d 607, 614 (6th Cir. 2013) (finding no error in instruction that the defendant's intent to exchange official acts for contributions could be "based on [his] words, conduct, acts, and all the surrounding circumstances disclosed by the evidence and the rational or logical inferences that may be drawn from them"); *United States v. Wright*, 665 F.3d 560, 569 (3d Cir. 2012) ("Parties to a bribery scheme rarely reduce their intent to words, but the law does not require that.").

## *McCORMICK* INSTRUCTION[25]

When a defendant accused of bribery is a politician who claims the payment was a campaign contribution, the specificity of the quid pro quo that the Government must prove beyond a reasonable doubt depends on whether the payment was, in fact, a campaign contribution.

You must decide whether Mr. DeQuattro's $10,000 check dated November 13, 2015 payable to One Nation Development, which is the basis of Counts 2, 4, and 7, and Mr. DeQuattro's $4,000 check dated January 12, 2017 payable to CM International Consulting, which is the basis of Count 9 and part of the basis of Counts 3 and 5, were campaign contributions to Mr. Cromwell.[26]  In deciding whether either check was a campaign contribution, you must consider the facts and circumstances as you find in the evidence. Some of the factors you may consider include the intention of Mr. Cromwell and Mr. DeQuattro,[27] whether the

---

[25] *McCormick* concerned Hobbs Act extortion under color of official right. Although the First Circuit has not addressed the issue, some courts have assumed, without deciding, that *McCormick* extends to bribery statutes. *See, e.g.*, *United States v. Davis*, 841 F. App'x 375, 379 n.7 (3d Cir. 2021) (honest services fraud); *United States v. Ring*, 706 F.3d 460, 466 (D.C. Cir. 2013) (same); *United States v. Siegelman*, 640 F.3d 1159, 1170 & n.14 (11th Cir. 2011) (18 U.S.C. § 666(a)(1)(B)); *see also United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993) ("Given the minimal difference between extortion under color of official right and bribery, it would seem that courts should exercise the same restraint in interpreting bribery statutes as the *McCormick* Court did in interpreting the Hobbs Act: absent some fairly explicit language otherwise, accepting a campaign contribution does not equal taking a bribe unless the payment is made in exchange for an explicit promise to perform or not perform an official act. Vague expectations of some future benefit should not be sufficient to make a payment a bribe."). The government makes the same assumption here without conceding the issue.

[26] *Evans v. United States*, 504 U.S. 255, 268 (1992) (whether payments to a political candidate were campaign contributions is a fact question for the jury).

[27] *McCormick v. United States*, 500 U.S. 257, 271 (1991) ("it is proper to inquire whether payments made to an elected official are in fact campaign contributions, and we agree that the

entity to which the check was made payable was a political body or otherwise associated with Mr. Cromwell's political campaign,[28] whether the money went into a campaign-specific account, and whether Mr. Cromwell spent the money on himself.[29]

If you find that a check was not a contribution to Mr. Cromwell's reelection campaign, then you must determine whether Mr. Cromwell understood that he was expected to exercise some influence as President of the Gaming Authority to benefit the Company as opportunities arose.[30] If the Government has proved this beyond a reasonable doubt, then it has proved an unlawful quid pro quo.

If you find that a check was a contribution to Mr. Cromwell's reelection campaign, then the Government must prove that there was an explicit quid pro quo.[31] The term **"explicit quid**

---

intention of the parties is a relevant consideration in pursuing this inquiry").

[28] *United States v. Cruzado-Laureano*, 404 F.3d 470, 482 (1st Cir. 2005) ("Although Cruzado asserts that the payment was a political contribution, he does not point to any evidence showing that Centro Cultural was a political body or had anything to do with his political campaign." In any event, "Cruzado requested in the end that the check be made out to "cash," not "Centro Cultural.").

[29] *United States v. Cruzado-Laureano*, 404 F.3d 470, 482 (1st Cir. 2005) ("A reasonable jury could have inferred that Cruzado intended not to use the money for anything related to the committee's activities (especially because the committee was formed specifically for the Puerto Rico Day Parade, then more than three months in the past), and that Cruzado intended to cash the check and take the money for himself.").

[30] *United States v. Martinez*, 994 F.3d 1, 7 (1st Cir. 2021) ("It is sufficient if the public official understood that he or she was expected to exercise some influence on the payor's behalf as opportunities arose.") (quoting *United States v. McDonough*, 727 F.3d 143, 152-53 (1st Cir. 2013)); *United States v. Turner*, 684 F.3d 244, 254 (1st Cir. 2012) (finding no error in the following instruction: "The Government is not required to prove that the defendant made some specific promise that he was going to perform some particular act at the time of the payment.").

[31] *McCormick v. United States*, 500 U.S. 257, 273 (1991) ("The receipt of [political] contributions is … vulnerable under the [Hobbs] Act as having been taken under color of official

**pro"** means a clear and unambiguous understanding that an official action was being promised in exchange for payment, rather than a vague expectation of some future benefit.[32] Explicit does not mean express.[33] An explicit quid pro quo does not require a certain form of agreement, but rather speaks to the degree to which the payor and payee were aware of the terms of their

---

right, but only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act."); *First Circuit Pattern Criminal Jury Instructions* § 4.18.1951 (updated June 24, 2019) ("If the property was obtained as a political or campaign contribution, the government must prove that the payment or other transfer was made in return for an explicit promise or understanding by [defendant] to perform or not to perform an official act."); *see also United States v. Cruzado-Laureano*, 404 F.3d 470, 482 (1st Cir. 2005) (using the term "specific" quid pro quo in place of "explicit" quid pro quo) (citing *McCormick*, 500 U.S. at 273).

[32] *McCormick v. United States*, 500 U.S. 257, 276 (1991) (Scalia, J., concurring) (stating that an explicit quid pro quo is a campaign contribution made in exchange for "an explicit promise of favorable future action" as opposed to "anticipation of favorable future action"); *United States v. Davis*, 841 F. App'x 375, 379 (3d Cir. 2021) (Explicit means "'[n]ot obscure or ambiguous, having no disguised meaning or reservation. Clear in understanding.'") (quoting BLACK'S LAW DICTIONARY 579 (6th ed. 1990)); *United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994) ("*Evans* provided a gloss on the *McCormick* Court's use of the word 'explicit' to qualify its quid pro quo requirement. Explicit, as explained in *Evans*, speaks not to the form of the agreement between the payor and payee, but to the degree to which the payor and payee were aware of its terms, regardless of whether those terms were articulated. Put simply, *Evans* instructed that by 'explicit' *McCormick* did not mean 'express.'") (citing *Evans v. United States*, 504 U.S. 255 (1992); *McCormick v. United States*, 500 U.S. 257 (1991)); *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992) ("what *McCormick* requires is that the quid pro quo be clear and unambiguous, leaving no uncertainty about the terms of the bargain"); *United States v. Inzunza*, 638 F.3d 1006, 1014 (9th Cir. 2011) ("this requirement of explicitness refers to the promise of official action, not the connection between the contribution and the promise").

[33] *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring); *United States v. Davis*, 841 F. App'x 375, 379 (3d Cir. 2021) ("Davis asserts that the words 'express' and 'explicit' mean the same thing, but he is incorrect."); *United States v. v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011) ("*McCormick* uses the word 'explicit' when describing the sort of agreement that is required to convict a defendant for extorting campaign contributions. Explicit, however, does not mean express.").

agreement.[34]  An explicit quid pro quo agreement need not be written or spoken. It may be

implied from the parties' actions and conduct.[35]

---

[34] *United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994) ("Explicit, as explained in *Evans*, speaks not to the form of the agreement between the payor and payee, but to the degree to which the payor and payee were aware of its terms, regardless of whether those terms were articulated.") (citing *Evans v. United States*, 504 U.S. 255 (1992)).

[35] *United States v. Davis*, 841 F. App'x 375, 379 (3d Cir. 2021) ("[A]n explicit arrangement need not be 'memorialized in a writing' or spoken aloud. 'To hold otherwise . . . would allow defendants to escape criminal liability through 'knowing winks and nods.' Indeed, 'a quid pro quo with the attendant corrupt motive can be inferred from an ongoing course of conduct,' or 'implied from [the parties'] words and actions.' Thus, 'direct and circumstantial evidence,' including the context of the arrangement, may be used to prove that there was a 'clear and unambiguous' promise of official action in exchange for payment.") (quoting *Evans v. United States*, 504 U.S. 255, 274 (1992) (Kennedy, J., concurring); *United States v. Siegelman*, 640 F.3d 1159, 1171 (11th Cir. 2011)); *United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994); *United States v. Carpenter*, 961 F.2d 824, 827 (9th Cir. 1992) ("Carpenter argues that the explicitness requirement cannot be met unless an official has specifically stated that he will exchange official action for a contribution. We disagree. To read *McCormick* as imposing such a requirement would allow officials to escape liability under the Hobbs Act with winks and nods, even when the evidence as a whole proves that there has been a meeting of the minds to exchange official action for money.").