UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                        )
                                        )
UNITED STATES OF AMERICA                )
                                        )
          v.                            )
                                        )          No. 20-CR-10271
DAVID DEQUATTRO,                        )
               Defendant                )
                                        )
_____)

**DEFENDANT'S OBJECTIONS TO GOVERNMENT'S PROPOSED JURY
INSTRUCTIONS**

Now comes the Defendant David DeQuattro, by and through undersigned counsel, and

hereby respectfully objects to the following jury instructions proposed by the government: (1)

Caution as to Cooperating Witness/Immunized Witness; (2) Missing Witness; (3) Not All Available

Evidence Need Be Presented; (4) Charts and Summaries; (5) Conspiracy to Commit Federal

Programs Bribery; (6) Federal Programs Bribery; (7) Quid Pro Quo; and (8) *McCormick* Instruction.

The grounds and reasons for each objection are set forth in detail below.

**I.      Caution as to Cooperating Witness/Immunized Witness**

The defense objects to the inclusion of the following language from the First Circuit Pattern

Instructions: "if [the witness] testified untruthfully, [he/she] could be prosecuted for perjury, or

making a false statement, even though [he/she] was testifying under a grant of immunity."  This

language suggests that a witness can only be prosecuted for perjury if he testifies untruthfully.

However, a witness could be prosecuted if he is truthful but the government disbelieves his

1

testimony.  The agreement between the government and the immunized witness makes clear that it is

the government, not the Court, that determines whether the immunity agreement has been violated.

The government's discretion on this issue is not subject to review or appeal.

## II.     Missing Witness

The defense objects to this requested instruction because it is unaware of the existence of any

predicate requiring it to be given.

## III.    Not All Available Evidence Need Be Presented

The defense objects to this proposed instruction as unnecessary and creating a risk of

confusion regarding the burden of proof.  The only authority cited in support of this proposed

instruction is the Third Circuit Pattern Instructions, and the First Circuit Pattern Instructions do not

include it, nor to counsel's knowledge is it an instruction that is regularly given in this District.

## IV.    Charts and Summaries

For the reasons set forth in Mr. DeQuattro's Motion *In Limine* to Limit or Exclude

Government Exhibits, the summary charts offered by the government do not satisfy Fed. R. Evid.

1006, and are therefore admissible only "to facilitate the presentation and comprehension of evidence

already in the record" under Fed. R. Evid. 611.  *United States v. Simmons*, 999 F.3d 199, 219 (4th

Cir. 2021) (citation omitted).  Materials admitted under Rule 611, unlike Rule 1006, may not be

relied upon as "independent evidence."  *Id.* at 220 (citation omitted).  Instead, the jury should be

instructed to "focus[] its deliberations on the evidence upon which th[e] chart[s are] based."  *Id.*

(citation omitted).

2

V.      **Conspiracy**

First, the defense objects to the following language: "You must consider the facts and circumstances as you find in the evidence regarding Mr. Cromwell and Mr. DeQuattro separately. Your decision as to one defendant does not necessarily mean that you will reach the same decision as to the other." Dkt. 123 at 5.  This proposed instruction, which in certain multi-defendant conspiracy cases is appropriate, is here inconsistent with the federal courts' "bilateral approach to conspiracy under which unless at least two people commit the act of agreeing, no one does." *United States v. Harris*, 733 F.2d 994, 1005 (2d Cir. 1984) (citation omitted).  With respect to the conspiracy charge, the innocence or guilt of each of two defendants may not be considered "separately," given the nature of the allegations in Count 1, *see infra* at 3-4.  Rather, the defendants' "fate[s] [are] linked," and if the jury finds that the government has failed to meet its burden with respect to Mr. DeQuattro or Mr. Cromwell, it must acquit both.  *Harris*, 733 F.2d at 1006.  Notably, while the government's sole authority for its conspiracy proposal is the First Circuit Pattern Instructions, the most recent iteration of that document does not include any language about considering co-conspirators separately.  *See* Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 4.18.371(1) (updated June 24, 2019), *available at* https://www.med.uscourts.gov/pdf/crpjilinks.pdf.

Second, the defense objects to the language indicating that the agreement must have "existed between at least two people." Dkt. 123 at 5.  The Indictment in this case alleges that Mr. Cromwell and Mr. DeQuattro "conspired with each other and with others known and unknown to the Grand Jury." Dkt. 1 ¶ 88.  The alleged objects of the conspiracy were soliciting and offering bribes in the form of payments and other things of value provided by Mr. DeQuattro to Mr. Cromwell.  *See id.*

¶ 17.  The government must prove the existence of this "*charged* conspiracy . . . , and not some other conspiracy."  *United States v. Dellosantos*, 649 F.3d 109, 126 n.18 (1st Cir. 2011) (emphasis in original).  The only plausible reading of the Indictment at issue is to require a conspiracy in which both Mr. DeQuattro and Mr. Cromwell joined.

Third, and along similar lines, the defense objects to the following language: "Even if the defendant was not part of the agreement at the very start, he can be found guilty of conspiracy if the Government proves that he willfully joined the agreement later."  Dkt. 123 at 6.  The Indictment provides no hint of any conspiracy pre-dating Mr. DeQuattro and/or Mr. Cromwell's involvement.  Indeed, the very first overt act alleged is Mr. Cromwell's solicitation of $10,000 from Mr. DeQuattro on July 1, 2014 (the very first day of the alleged conspiracy).  Dkt. 1 at ¶¶ 20-21.  The government's proposed instruction is therefore inapplicable to the conspiracy alleged in the Indictment.

## VI.  Federal Programs Bribery

The government's proposed instruction on this issue invokes a "stream of benefits" theory not supported by the Indictment in an attempt to improperly circumvent the requirement of a unanimous finding of guilt beyond a reasonable doubt.  As proposed by the government, the jury would incorrectly be required to convict Mr. DeQuattro if, for example, some but not all jurors found that he corruptly provided the Bowflex machine to Mr. Cromwell and other but not all jurors found that he corruptly provided the hotel suite reservation.

As an initial matter, Count 5 does not charge bribery under a "stream of benefits" theory.  The primary authority relied upon by the government on this issue involved an express allegation in the operative count that the defendant "corruptly solicited and demanded, and accepted and agreed to

4

accept, a stream of benefits" from the payor, "including, but not limited to" one specific item of value.  *United States v. Lopez-Cotto*, 884 F.3d 1, 8 (1st Cir. 2018).  Here, by contrast, the operative count does not so much as mention a so-called "stream of benefits." [1]   Instead, it specifically alleges three specific purported separate "bribes."  Dkt. 1 at ¶ 92.  Only a special verdict and instructions requiring unanimity can neutralize the prejudice caused by this clearly duplicitous charge.

Even setting aside whether the theory is properly charged, in a true stream of benefits case such as *Lopez-Cotto*, the jury must find a stream of benefits provided to a public official *in exchange for a pattern of official acts*.  *See also United States v. Lopez Martinez*, 994 F.3d 1, 7 (1st Cir. 2021) (explaining that the theory permits the government to "prove an agreement for [an] ongoing stream of benefits rather than . . . for stand-alone bribes" (citation omitted)); *United States v. Woodward*, No. 12-CV-11431, 2012 WL 4856055, at *7 (D. Mass. Oct. 10, 2012) (Woodlock, J.) (requiring an "exchange for a pattern of official acts favorable to the donor" (citation omitted)).  A finding that Mr. DeQuattro provided one (or even two) of the specifically alleged payment and gifts in Count 5 would not be sufficient to support conviction on a stream of benefits theory.  A single payment or benefit is not a "stream" in any sense of the word.  And the government has failed to point to a single cognizable official act taken by Mr. Cromwell in exchange for payment, much less the "pattern" of such acts required under stream of benefits case law.

In sum, the government's proposed instruction conflates a stream of benefits theory not charged in the Indictment with allegations of specific stand-alone bribes in an attempt to avoid a

---

[1] Indeed, the only reference to such a theory in the entire Indictment is the passing statement, in the Manner and Means of the Conspiracies section, that Mr. DeQuattro provided Mr. Cromwell "with a stream of payments and in-kind benefits."  Dkt. 1 ¶ 19a.

unanimous jury finding on either.

## VII.    Quid Pro Quo

The defense objects to the statement that Mr. DeQuattro may be convicted based on an "understanding" that Mr. Cromwell would perform an official act.  Dkt. 123 at 19.  Rather, the statute requires corrupt criminal intent, namely "a specific intent to give or receive something of value *in exchange* for an official act."  *United States v. Bravo Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013) (quoting *United States v. Sun-Diamond Growers of Calif.*, 526 U.S. 398, 404-05 (1999)); *see also* Dkt. 123 at 13 n. 13 ("[R]equiring a jury to find a quid pro quo . . . ensures that a particular payment is made in exchange for a *commitment* to perform official acts . . . . (quoting *United States v. Ganim*, 510 F.3d 134, 127 (2d Cir. 2007)) (emphasis in original)).

Relatedly, the defense objects to any instruction that a conviction may be based on Mr. DeQuattro's implicit understanding that Mr. Cromwell would "not perform" an official act.  Dkt. 123 at 19.  Instead, as proposed by Mr. DeQuattro, the government should be required to prove a communication by Mr. Cromwell that, absent payment, he would otherwise perform the official act in question.  *See* Dkt. 124 at 21 (Requirement of Change in Official Acts) (citing cases).  The government's proposed instruction, as written, carries a significant risk of exposing Mr. DeQuattro to criminal liability based on entirely permissible campaign donations and/or gifts coupled with subsequent inaction by Mr. Cromwell as to a matter that Mr. Cromwell never communicated, explicitly or otherwise, to Mr. DeQuattro that he would abstain from doing if paid, or, alternatively, not abstain from acting if not paid.

6

## VIII.  *McCormick* **Instruction**

First, the defense submits that whether or not the payments by Mr. DeQuattro constituted campaign contributions triggering the requirement of an explicit *quid pro quo* is governed by the donor's (here Mr. DeQuattro's) intent.  *See McCormick v. United States*, 500 U.S. 257, 275 (1991) (rejecting government argument that jury had necessarily found payment not to be a campaign contribution by convicting on tax count and explaining "the jury was instructed that if it found that [the defendant] did not use the money for campaign expenses or to reimburse himself for such expenses, then the payments given him by the doctors were taxable income *even if* the jury found that the doctors intended the payments to be campaign contributions" (emphasis in original)).  Whether each check was made payable to "a political body" or a "campaign-specific account" is an inappropriate consideration in the unique context of Tribal elections where Federal and State campaign laws do not apply.  Dkt. 123 at 22-23.  Similarly, the relevant question is whether Mr. DeQuattro and Mr. Cromwell agreed to a corrupt *quid pro quo* exchange at the time payment was made.  *See McDonnell v. United States*, 136 S. Ct. 2355, 2371 (2016) ("It is up to the jury, under the facts of the case, to determine whether the public official agreed to perform an 'official act' at the time of the alleged *quid pro quo*."); *United States v. Silver*, 948 F.3d 538, 556 (2d Cir. 2020) ("*McDonnell* re-emphasizes that the relevant point in time in a *quid pro quo* bribery scheme is the *moment at which the public official accepts the payment*." (emphasis in original)).  Mr. Cromwell's unilateral subsequent decision about how to spend the money has little probative value on this point, especially with regard to Mr. DeQuattro who had no knowledge that Mr. Cromwell would expend the funds on personal matters.

7

Second, the defense objects to any requirement that, in order to trigger *McCormick*, a political contribution must have been made specifically "to Mr. Cromwell's reelection campaign." Dkt. 123 at 23.  As noted in Mr. DeQuattro's proposed instructions, Mr. Cromwell was also entitled to solicit contributions for political allies.  *See* Dkt. 124 at 7.

Third, the defense objects to the instruction that, if a particular check was not a campaign contribution, a guilty verdict may be based on Mr. Cromwell's understanding "that he was expected to exercise some influence as President of the Gaming Authority to benefit the Company as opportunities arose."  Dkt. 123 at 23.  As the government acknowledges elsewhere, Mr. Cromwell's mere unilateral understanding is not sufficient to support a conviction unless he "conveyed to Mr. DeQuattro his agreement" to perform an official act.  Dkt. 123 at 20.  Moreover, the proposed instruction reflects an incorrect interpretation of the "as the opportunities arise" theory of bribery.  As an initial matter, the Indictment makes no reference whatsoever to such a theory.  Even setting this issue aside, the government's proposed instruction stretches the theory beyond recognition in a manner that would expose virtually anyone who makes a political donation to criminal liability.  Merely invoking an "opportunities arise" theory does not relieve the government of its burden to prove a *quid pro quo* exchange of payment for official acts.  Rather, under any theory of bribery, *McDonnell*, which as the government concedes is applicable here, "requires identification of a particular *question or matter* to be influenced."  *Silver*, 948 F.3d at 552 (emphasis in original).  The question or matter must be "focused and concrete."  *Id.* at 553 (quoting *McDonnell*, 136 S. Ct. at 2369-70).  Even where the "opportunities arise" theory is applicable, the defendants "must still understand the exchange to be one of payment for s*pecific* official[] acts as the opportunities to

commit *those* acts arise." *Id.* at 554-55 (citation omitted) (emphasis in original).  By contrast, it is not sufficient for a public official to merely "promise to take some or any official action beneficial to the payor as the opportunity to do so arises." *Id.* at 552-53.  Indeed, this is a promise "so vague as to be meaningless." *Id.* at 556.  If the government's instruction were an accurate statement of the law, nearly any political donor would fear being convicted of bribery. *See McCormick*, 500 U.S. at 272 ("[T]o hold that legislators commit the federal crime of extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, . . . would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation."); *Citizens United v. FEC*, 558 U.S. 310, 359 (2010) ("[A] substantial and legitimate reason, if not the only reason, . . . to make a contribution to[] one candidate over another is that the candidate will respond by producing those political outcomes the supporter favors.").  Again, the lack of specificity included in the government's instruction is not surprising: Mr. Cromwell neither promised nor performed a single official act that the government has alleged related to the donations/payments and to instruct on "as the opportunities arise" on a failure to act – particularly one that is not communicated and does not result from an agreement to alter one's conduct so as not to act – totally dilutes the separation between bribery, gratuities, and political contributions with an expectation of potential future goodwill.  This is merely one instance in a long line of repeated failures by the government to identify a single cognizable official act taken by Mr. Cromwell in exchange for payment.

Respectfully Submitted,
DAVID DEQUATTRO
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: August 9, 2021

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, August 9, 2021, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.