UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>) No. 20-CR-10271<br>DAVID DEQUATTRO, )<br>       Defendant )<br>) | |

**DEFENDANT'S MOTION TO DISMISS COUNT 5**

    Now comes the Defendant David DeQuattro, by and through undersigned counsel, and hereby respectfully moves this Honorable Court to dismiss Count 5 of the Indictment in this matter as duplicitous.

    A duplicitous charge is "one that join[s] in a single count . . . two or more distinct and separate offenses." *United States v. Newell*, 658 F.3d 1, 23 (1st Cir. 2011) (citation omitted). "The risks of serious unfairness presented by a duplicitous indictment are apparent. In conditions where jurors disagree among themselves as to just which offenses the evidence supports, the defendant may nevertheless wind up convicted because the jurors agree that the evidence showed that he had committed *an* offense, even if it was ambiguous as to which one." *Id.* at 27. The First Circuit has held § 666 counts including multiple transactions that "occurred on various dates and involved misapplications [of funds] from various sources" duplicitous. *Id.* at 23-28.

    The Indictment at issue here presents precisely the same risks articulated by the *Newell*

1

Court.  Count 5 alleges that Mr. DeQuattro corruptly provided "[b]ribes from the Company to [Mr. Cromwell] of a Bowflex Revolution home gym valued at $1,700 on or about 8/5/16; $4,000 on or about 1/12/17; and $1,849.37 paid on or about 5/18/17 for a stay at the Seaport Boston Hotel."  Dkt. 1 at ¶ 92.  Despite this clear aggregation of multiple offenses in a single count, the government has opposed any specific unanimity instruction or special verdict.  To the contrary, it proposes an instruction that would allow the jury to convict Mr. DeQuattro based on his alleged provision of "the Bowflex gym, [the] $4,000 check, ***and/or*** the partly paid hotel bill" to Mr. Cromwell.  Dkt. 123 at 10 (emphasis added).  It could hardly be clearer that, under the government's proposed instruction, the jury would be required to return a guilty verdict on Count 5 if, for example, some but not all jurors found that Mr. DeQuattro corruptly provided the Bowflex machine to Mr. Cromwell and other but not all jurors found that he corruptly provided the hotel suite reservation.  This renders Count 5 duplicitous and subject to dismissal.  *See Flaherty v. United States*, 355 F.2d 924, 925 (1st Cir. 1966).

While the First Circuit has distinguished *Newell* in a case where the § 666 charge was expressly predicated upon acceptance of a "stream of benefits" in exchange for official acts, such a theory has no place in the present case.  *See United States v. Lopez-Cotto*, 884 F.3d 1, 11-12 (1st Cir. 2018).  As an initial matter, Count 5 does not charge bribery under a "stream of benefits" theory.  Instead, it alleges three separate "bribes," all several months apart.[1]  This stands in sharp contrast to *Lopez-Cotto* where the § 666 count expressly alleged that the

---

[1] Indeed, the only conceivable reference to a stream of benefits theory in the entire Indictment is the passing statement, in the Manner and Means of the Conspiracies section, that Mr. DeQuattro provided Mr. Cromwell "with a stream of payments and in-kind benefits."  Dkt. 1 ¶ 19a.

defendant "corruptly solicited and demanded, and accepted and agreed to accept, a stream of benefits" from the payor, "including, but not limited to" one specific item of value. *Id.* at 8. Even setting aside whether the stream of benefits theory is properly charged, in order to convict on that basis, the jury must find a ***stream*** of benefits provided to a public official. *See United States v. Lopez Martinez*, 994 F.3d 1, 7 (1st Cir. 2021) (explaining that the theory permits the government to "prove an agreement for [an] ongoing stream of benefits rather than . . . for stand-alone bribes" (citation omitted)). A finding that Mr. DeQuattro provided one (or even two) of the specifically alleged payment and gifts in Count 5 would not be sufficient to support conviction on a stream of benefits theory. A single payment or benefit is not a "stream" in any sense of the word.

It is also important to note that, even under a stream of benefits theory, bribery requires a *quid pro quo*, meaning a corrupt exchange. In the stream of benefits context, there must be a "series" or "pattern" of official acts promised or committed for payment. *See id.* at 7; *United States v. McDonough*, 727 F.3d 143, 154 (1st Cir. 2013) ("[B]ribery can be accomplished through an ongoing course of conduct, so long as the evidence shows that the favors and gifts flowing to a public official [are] *in exchange for* a pattern of official actions favorable to the donor." (citation omitted)); *United States v. Sawyer*, 85 F.3d 713, 730 (1st Cir. 1996) ("[A] person with continuing and long-term interests before an official might engage in a pattern of repeated, intentional gratuity offenses in order to coax ongoing favorable official action . . . ."); *United States v. Woodward*, No. 12-CV-11431, 2012 WL 4856055, at *7 (D. Mass. Oct. 10, 2012) (Woodlock, J.) (requiring an "exchange for a pattern of official acts favorable to the

donor" (citation omitted)).  Here, the government has failed to allege a single cognizable official act taken by Mr. Cromwell in exchange for payment, much less the "pattern" of such acts charged or promised as a required prerequisite to make applicable the stream of benefits case law.  This omission provides another independent reason for the inapplicability of a stream of benefits theory.

In sum, the government's proposed instruction on this issue conflates a stream of benefits theory not charged in the Indictment with allegations of specific stand-alone bribes in an attempt to avoid a unanimous jury finding on either.  In order to convict Mr. DeQuattro on a stream of benefits theory, the jury would have to unanimously find that he provided a stream of payments and/or other benefits to Mr. Cromwell (*i.e.*, at least three such items of value) in exchange for a pattern of official acts.  In order to convict him of stand-alone bribes, the jury would need to unanimously find that the same specific payment or benefit was provided corruptly in exchange for an official act.  The government eschews both of the foregoing options, claiming instead that each juror may vote to convict based on any one of the three payment and benefits alleged in Count 5.  The result would be not only a clearly duplicitous charge but an instruction that failed to provide a proper remedy for the duplicity.  Mr. DeQuattro, accordingly, respectfully requests that Count 5 be dismissed.  *See Newell*, 658 F.3d at 28 (finding error in "failure to provide a specific unanimity instruction" on duplicitous counts) *United States v. Hernandez*, 35 F. App'x 300, 304 (9th Cir. 2002) (unpublished) (reversing denial of motion to dismiss where jury instructions did "not cure the [duplicitous] indictment"); *United States v. Gianelli*, 585 F. Supp. 2d 186, 192 (D. Mass. 2008) ("If . . . the government does not elect[] a single theory under which

to proceed, the Court will entertain a renewed motion to dismiss.").

## COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel conferred with counsel for the government and the government opposed the defendant's requested relief.

Respectfully Submitted,
DAVID DEQUATTRO
By His Attorney,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: August 20, 2021

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, August 20, 2021, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
