UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) | |
| v. | ) ) | No. 20-CR-10271 |
| DAVID DEQUATTRO,<br>       Defendant | ) ) ) ) ) | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S OBJECTIONS TO HIS PROPOSED JURY INSTRUCTIONS**

Now comes the Defendant David DeQuattro, by and through undersigned counsel, and hereby respectfully submits this Response to the Government's Objections to his Proposed Jury Instructions.

**Request No. 1: Caution as to Cooperating Witness**

The sentence that the government claims is "argumentative" and "unsupported" by Mr. DeQuattro's citations is in fact a direct quotation from *United States v. Dailey*, 759 F.2d 192, 198 (1st Cir. 1985), where the First Circuit noted with approval the Fourth Circuit's declaration that it is "obvious that promises of immunity or leniency premised on cooperation in a particular case may provide a strong inducement to falsify in that case."

Mr. DeQuattro maintains that it is also appropriate in this case to instruct the jury that, in order to convict, it must find beyond a reasonable doubt "that the Company President is telling the truth." In a very real sense, the Company President's "uncorroborated testimony is the only evidence

1

of [Mr. DeQuattro's] guilt." Dkt. 153 at 2 (citation omitted).[1]  In order to convict Mr. DeQuattro on any count, the government must prove beyond a reasonable doubt that he and co-defendant Cedric Cromwell engaged in a corrupt *quid pro quo*, meaning an exchange of one or more items of value (the "*quid*") for one or more official acts (the "*quo*") or for the promise of one or more official acts. *See United States v. Bravo Fernandez*, 722 F.3d 1, 19 (1st Cir. 2013) (quoting *United States v. Sun-Diamond Growers of Calif.*, 526 U.S. 398, 404-05 (1999)).  In these circumstances, a *Dailey* instruction is warranted.

## Request No. 2: Character Evidence

The language that the government objects to here is taken directly from the Pattern Instruction, and it is entirely appropriate (provided, of course, that Mr. DeQuattro does ultimately introduce character evidence).  The government is not correct that Mr. DeQuattro may only introduce such evidence if his character is specifically attacked.  This is because the character traits at issue are "incompatible" with the government's allegations that he corruptly "offer[ed] . . . bribe[s]" to Mr. Cromwell and, accordingly, the proffered testimony constitutes substantive evidence of innocence. *Michelson v. United States*, 335 U.S. 469, 483 (1948); *see also, e.g.*, *United States v. Winter*, 663 F.2d 1120, 1147 (1st Cir. 1981), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52 (1997) (affirming instruction that character evidence "may indicate to you that it is improbable that a person of good character would commit the crimes charged, and, therefore, cause you to have a reasonable doubt").

---

[1] Mr. DeQuattro strongly contends however that even the Company President's testimony will fail to provide sufficient proof to warrant submitting the case to the jury.

2

In the full context of the proposed instruction, which refers to a reputation for "honesty, truthfulness and integrity," there is little risk that the jury will understand "integrity" to refer to "general good character." In any event, even if the Court agrees with the government on this issue, the remedy would be to simply strike the word "integrity" rather than rejecting the entire instruction.

### Request No. 6: Campaign Contributions

Mr. DeQuattro maintains that this proposed instruction is an accurate reflection of the law and is not argumentative. Indeed, the government cites no particular aspect of the proposed instruction that it contends is incorrect or otherwise improper, nor does it articulate any rationale for rejection of the proposal in its entirety. *Cf. United States v. Wood*, 982 F.2d 1, 3 (1st Cir. 1992) (holding that trial judge properly declined to provide instruction that was "not accurate" and "irrelevant" to the case).

### Request No. 7: No Contribution Limits for Tribal Elections

The government provides no convincing explanation as to why the jury should not be accurately instructed that Mr. DeQuattro's payments to Mr. Cromwell did not violate any campaign laws. This is an issue that the jury may predictably wonder about, and there is no reason not to clarify that campaign laws and contribution limits are not at issue in the case.

### Request No. 8: Requirement of Explicit *Quid Pro Quo*

Mr. DeQuattro would have no objection to striking "may have" from the first sentence of this proposed instruction. The government's argument that the "intention of the parties" is but one of many factors relevant to whether a particular payment is a campaign contribution

3

triggering the explicit *quid pro quo* requirement appears to reference factors applied by the court of appeals in *McCormick* that the Supreme Court did not endorse. *See McCormick*, 500 U.S. 257, 270 (1991). The Court later implied, consistent with Mr. DeQuattro's proposed instruction, that the inquiry should focus on the donor's intent. *See id.* at 275.

### Request No. 9: Subjective Fear Not Sufficient

While the government contends that Mr. DeQuattro's proposed instruction "misstates the law," it cites no case in which a court has found the existence of a *quid pro quo* supported solely by evidence of subjective fear on the part of one party, untethered to any threat, promise, or communication of any kind by the other party. To the contrary, the cases the government has relied on consistently involved evidence of communications expressly tying the alleged payment to one or more specific official acts. *See Evans v. United States*, 504 U.S. 255, 266 n.17 (1992) (quoting the defendant saying, "if you didn't give me but three [thousand dollars], on this, I've promised to help you. . . ."); *Cordaro v. United States*, 933 F.3d 232, 242 (3d Cir. 2019) (reciting evidence that when contractor "was worried about losing" contract, defendant asked whether he would pay "to keep his work"); *United States v. Siegelman*, 640 F.3d 1159, 1166 (11th Cir. 2011) (recounting defendant governor's statement to a lobbyist "that because [the payor] had contributed at least $350,000 to [the defendant's] opponent in the election, [the payor] needed to 'do' at least $500,000 in order to 'make it right' with the [defendant's] campaign"); *United States v. McDonough*, 727 F.3d 143, 154 (1st Cir. 2013) (citing business person's testimony that "he was told that he had to pay the money to get the deals done"); *United States v. Blandford*, 33 F.3d 685, 690-91 (6th Cir. 1994) (quoting conversation between payor and defendant directly

4

tying payment to particular legislation); *United States v. Carpenter*, 961 F.2d 824, 828 (9th Cir. 1992) (noting that, when undercover agent "asked 'what it's going to cost,'" defendant's aide "responded with a figure of $20,000"); *United States v. Sittenfeld*, No. 20-CR-142, 2021 WL 779136, at *14 (S.D. Ohio Mar. 1, 2021) (citing defendant's acceptance of an "express offer to guarantee official action in exchange for $20,000 in campaign contributions" (emphasis in original)).

The need for such a communication, express or implied, is heightened where, as here, the alleged official act is a mere inaction by the official. Still more problematic is the fact that, in the circumstances of this case, the inaction at issue was unremarkable. There will be no evidence that Mr. Cromwell threatened to terminate the contract. To hold that Mr. DeQuattro's payments to Mr. Cromwell, coupled with Mr. Cromwell's mere failure to terminate a contract that he was never considering terminating, may, without more, support a conviction for *quid pro quo* bribery based on a subjective fear would expose anyone providing a payment or gift to an official to potential federal prosecution. It would also all but eliminate the critical distinction between *quid pro quo* bribery and legal payments and gifts to promote goodwill and/or cultivate business or political friendship.

### Request No. 10: Gifts

The government identifies no aspect of this proposed instruction that is inaccurate or otherwise objectionable. Mr. DeQuattro maintains that it is appropriate.

### Request No. 12: Gratuities and Rewards

Mr. DeQuattro maintains that this proposed instruction is both accurate and necessary,

especially given the unique theory of prosecution.  *See supra*, Request No. 9.

### Request No. 13: No Bribery in Execution of Contract

The government is correct that Mr. DeQuattro is not charged with making any payment to induce Mr. Cromwell and/or the Tribe to enter into a contract with the Company. Accordingly, the proposed instruction is accurate.  The charged conspiracy began "on or about July 1, 2014," Dkt. 1 at ¶ 88, more than a month and a half after execution of the contract on May 7, 2014, *id.* at ¶ 15.  The first donation was not made until July 26, 2014, over two-and-a-half months after the contract was entered.  *Id.* at ¶ 23.  The proposed instruction is accurate and would help guide the jury's deliberations.

### Request No. 14: Requirement of Payment on Behalf of Company

This proposed instruction is necessary based on the language of the Indictment.  *See* Dkt. 1 at ¶ 17 (alleging that object of conspiracy was for Mr. DeQuattro "to give money and other things of value *from the Company*" to Mr. Cromwell (emphasis added)); *id.* at ¶ 92 (alleging that all purported bribes were "from the Company").[2]

### Request No. 15: Definition of Official Act

Mr. DeQuattro maintains that this proposed instruction is accurate.  In characterizing one particular sentence as "flatly wrong," the government appears to ignore the final clause: "Second, the government must prove that the public official made a decision or took an action on the relevant question, matter, cause, suit, proceeding, or controversy, *or agreed to do so*."  Dkt. 124 at 17 (emphasis added).

---

[2] This is the same issue raised by the government's objection to Request No. 3.

### Request No. 16: Specificity of Question or Matter to be Influenced

Mr. DeQuattro maintains that this proposed instruction reflects an accurate statement of the law and, more particularly, the Second Circuit's analysis in *United States v. Silver*, 948 F.3d 538 (2d Cir. 2020). The government's objection to the phrase "unspecified action" could be addressed by replacing that language with "action on an unspecified matter."

### Request No. 17: Requirement of Power to Act

Mr. DeQuattro maintains that this proposed instruction reflects an accurate statement of the law as articulated in *United States v. Gracie*, 731 F.3d 1, 3 (1st Cir. 2013). The government's attempt to inject a "stream of benefits" theory into this case should be rejected for reasons set forth in detail elsewhere. *See* Dkt. 129 at 4-5; Dkt. 151 at 2-4.

### Request No. 18: Requirement of Change in Official Acts

Mr. DeQuattro's proposed instruction acknowledged that this is an area of some inconsistency in the First Circuit caselaw. *See* Dkt. 124 at 21 (citing *United States v. McDonough*, 727 F.3d 143, 160 (1st Cir. 2013) as contrary authority). But, in the circumstances of this case, there is a heightened need for the proposed instruction. Unlike in *McDonough* and the other precedents cited by the government, the official act at issue here is a mere inaction on Mr. Cromwell's part, namely, failure to take steps to terminate the Company's contract with the Tribe. In these circumstances, absent an instruction requiring a change (or agreement to change) Mr. Cromwell's official acts, there is a substantial risk that Mr. DeQuattro will be prosecuted based on the combination of an ordinary and lawful payment and an unremarkable inaction by Mr. Cromwell. *McDonough*, by contrast, involved affirmative actions taken by a public official

in exchange for payment. *See* 727 F.3d at 154-55 (in exchange for payment former Speaker of the House contacted Department of Education Commissioner regarding award of lucrative state contract and later about funding the project). The government's terse dismissal of *United States v. Tavares*, 844 F.3d 46, 55 (1st Cir. 2016), overlooks the fact that, in interpreting the state gratuity statute, the *Tavares* Court was guided by some of the very same federal precedents at issue here. *See id.* at 55-56 (repeatedly citing *Sun-Diamond*, 526 U.S. 398).

## Request No. 19: Requirement of Discretionary Action

The statutory requirement that payment be intended "to influence" the recipient official necessarily demands some measure of discretion. Indeed, actions which do not entail discretion are not subject to influence. While the government is correct that, in some circumstances, providing advice to another official may support conviction, that is only so when the advice is provided "knowing or intending [it] to form the basis of an 'official act.'" *McDonnell*, 136 S. Ct. at 2371. The underlying official act still must be a discretionary matter. The government does not take the position, because it cannot, that the mere signing, issuance, or approval of checks by the Gaming Authority for payments due under the Tribe's contract with the Company involved any discretion whatsoever. Rather than allege the co-signing of the checks to be an official act, the government in prior pleadings has described the alleged act as "ensuring favorable action or inaction on the Contract." Dkt. 50 at 5. Accordingly, Mr. DeQuattro's proposed instruction is both accurate and appropriate. The Court need not and should not permit a theory that is insufficient as a matter of law to be presented to the jury.

8

### Request No. 20: Requirement of Official's Intent

Contrary to the government's suggestion, Mr. DeQuattro's proposed instruction does not require a finding that Mr. Cromwell in fact intended to perform the official act in question. Rather, it demands a finding that he "intended to take an official act" or "conveyed such an intent to Mr. DeQuattro." Dkt. 124 at 23. This is entirely consistent with the government's quotation from *McDonnell*. *See* Dkt. 153 at 9 (stating that the official need not "intend to perform the 'official act,' ***so long as he agrees to do so***" (emphasis added)). This instruction request does not preclude a conviction if there is evidence (which is lacking) that Mr. Cromwell communicated (*i.e.*, conveyed by act or words) a promise to perform an official act even if he in fact did not intend to fulfill the promise.

### Request No. 21: Good Faith

The government's objection to this request could be resolved by the insertion of a word such as "legitimate" prior to "political contributions." The government does nothing to question the accuracy or appropriateness of any other aspect of the proposed instruction.

### Request No. 22: Conspiracy

This Court should reject the government's belated attempt to reframe the charged conspiracy in this case as an illicit agreement between Mr. DeQuattro and the Company President. The Indictment specifically alleges that both Mr. DeQuattro and Mr. Cromwell were parties to the charged conspiracy. *See* Dkt. 1 ¶ 88. The alleged objects of the conspiracy were described as follows:

> for CROMWELL to use his position and influence as Chairman of
> the Tribe and President of the Gaming Authority to solicit and

>accept payments and other things of value from the Company through DEQUATTRO, in exchange for favorable action or inaction on the Contract by the Gaming Authority, and for DEQUATTRO to give money and other things of value from the Company to CROMWELL in exchange for favorable action or inaction on the Contract by the Gaming Authority. The purpose of the conspiracy was for CROMWELL, DEQUATTRO, and the Company President to enrich themselves personally.

*Id.* ¶ 17. The only plausible reading of the Indictment is to require a conspiracy in which both Mr. DeQuattro and Mr. Cromwell joined. To permit the government to proceed on a theory that Mr. DeQuattro conspired with the Company President and not Mr. Cromwell would therefore raise the prospect of an impermissible constructive amendment. *See, e.g.*, *Stirone v. United States*, 361 U.S. 212, 217 (1960); *United States v. Bucci*, 525 F.3d 116, 131 (1st Cir. 2008).

### Request No. 23: Summary Charts

Mr. DeQuattro maintains that this proposed instruction is accurate and appropriate for reasons set forth in his motion *in limine* on this topic.

 

> Respectfully Submitted,
> DAVID DEQUATTRO
> By His Attorney,
>
> **/s/ Martin G. Weinberg**
> Martin G. Weinberg, Esq.
> Mass. Bar No. 519480
> 20 Park Plaza, Suite 1000
> Boston, MA 02116
> (617) 227-3700
> owlmgw@att.net

Dated: August 27, 2021

## **CERTIFICATE OF SERVICE**

      I, Martin G. Weinberg, hereby certify that on this date, August 27, 2021, a copy of the foregoing document has been served via Electronic Court Filing system on all registered participants.

                                              **/s/ Martin G. Weinberg**
                                              Martin G. Weinberg, Esq.