UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)   Criminal No. 20-CR-10271<br>DAVID DEQUATTRO,    )<br>        Defendant   )<br>_____) | |

**PRETRIAL HEARING MEMORANDUM OF LAW ON DEFENSE EXPERT**

Now comes the Defendant, David DeQuattro, by and through undersigned counsel and hereby respectfully submits this Pretrial Hearing Memorandum of Law concerning the admissibility of the expert testimony of Attorney Skip Durocher.

The cornerstone purpose of expert testimony is to " 'assist the trier of fact to understand the evidence or determine a fact in issue.' " *Jazmin Campbell v. Metro. Prop. & Cas. Ins Co.,* 239 F.3d 179, 183 (2d Cir. 2001) (quoting Fed. R. Evid R 702) (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993)). In *Daubert,* the Supreme Court recognized that Rule 702 intends to relax "the traditional barriers to 'opinion' testimony," thus "reinforc[ing] the idea that there should be a presumption of admissibility" of expert testimony. *Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir.1995) (citing *Daubert,* 509 U.S. at 588).

Expert witness testimony "that shed[s] light on activities not within the common knowledge of the average juror" are particularly admissible. *United States v. Duncan*, 42 F.3d 97, 102 n.3 (2d. Cir. 1994). Expert witness testimony is similarly admissible "even where the jury might have general knowledge of the subject at issue, so long as such knowledge may be incomplete or inaccurate given the particular facts and circumstances relevant to the particular case for which expert testimony is offered." *Katt v. City of New York*, 151 F. Supp. 2d 313, 358

1

(S.D.N.Y. 2001), *aff'd in part sub nom. Krohn v. New York City Police Dep't*, 60 F. App'x 357 (2d Cir. 2003), and *aff'd sub nom. Krohn v. New York City Police Dep't*, 372 F.3d 83 (2d Cir. 2004) (allowing an expert to testify to the code of silence of police organizations rejecting the contention that a jury could "readily understand" the code without the help of an expert).  The testimony that Attorney Durocher intends to proffer concerning the customs and practices of conducting business in Indian country and the need to support tribes in order to gain trust and further business opportunities is informed by his 27 years of professional experience as an Indian Law expert as well his personal and professional experience as a non-tribal member building a business in Indian country, as well as his representation of both Tribes conducting RFP decision-making and non-Tribal businesses endeavoring to be selected for Tribal business.  This is certainly not within the common knowledge of the average juror. Even if jurors have some knowledge regarding business development or the importance of supporting business partners, it is unlikely that any juror has had these experiences in the context of Native American tribes.

     Courts have widely permitted the sort of testimony regarding the unique cultural and business practices that Attorney Skip Durocher intends to proffer.  *See Bowoto v. Chevron Corp.,* No. C 99-02506 SI, 2006 WL 2604592, at *3 (N.D. Cal. Aug. 23, 2006) ("Numerous courts have allowed expert testimony on background material, when cultures or locations would be foreign to a jury"). In *Bowoto*, the court allowed testimony regarding practices in Nigeria that were relevant to provide a context for the events alleged but excluded certain additional testimony on background issues "only tenuously related to this lawsuit". 2006 WL 2604592, at *2-4. In *Ji v. Bose Corp.*, the district court permitted two experts to "testify to the ordinary custom and practice of the modeling industry," when the ordinary practices in the modeling industry were relevant to the likely interpretation of a contract. 538 F. Supp. 354, 358 (D. Mass. 2008). In

2

*Dang Vang v. Vang Xiong X. Toyed*, the court admitted expert testimony concerning the Hmong culture and role of women in that culture, which was relevant to assist trier of fact in understanding certain behavior of parties that might otherwise be confusing. 944 F.2d 476 (9th Cir. 1991); *see also United States Equal Emp. Opportunity Comm'n v. Placer ARC,* 147 F. Supp. 3d 1053 (E.D. Cal. 2015) (admitting expert testimony on deaf culture in the United States); *Katt*, 151 F. Supp. 2d 313 (admitting expert testimony on unique organizational culture and practices of the New York City police department); *The Shaw Grp., Inc. v. Marcum*, 516 F.3d 1061 (8th Cir. 2008) (admitting expert testimony as to ordinary business practices of those engaged in private contracting with military); *Royal Marco Point 1 Condo. Ass'n v. QBE Ins. Corp*, No. 2:07-CV-16-FTM-99SPC, 2011 WL 470561, at *4 (M.D. Fla. Feb. 2, 2011) (admitting expert testimony on standard and typical practices in the insurance industry); *WH Smith Hotel Servs., Inc. v. Wendy's Int'l, Inc.*, 25 F.3d 422, 429 (7th Cir. 1994) (affirming admission of expert testimony on customs in the commercial real estate industry). Attorney Durocher is preeminently qualified to speak to the cultural and business practices of Native American tribes having previously litigated and studied issues involving tribal law, having participated in evaluating business proposals in connection with his representation of tribes, as well as representing non-tribal entities that seek to do business in Indian country.

Importantly, Attorney Durocher also has decades of personal experience as a non-tribal member conducting and building a business in Indian country. *In Den Norske Bank AS v. First Nat. Bank of Bos.*, the court admitted expert testimony on certain banking industry standards relevant to the litigation based on the experts' forty-years of experience in the banking industry. 75 F.3d 49, 57 (1st Cir. 1996); *see also Goldberg v. 401 North Wabash Venture LLC*, 2013 WL 212912, at *5 (N.D. Ill. Jan. 18, 2013) (rejecting defendant's argument that expert's

3

"methodology is unreliable because he applies personal experience and knowledge of industry customs and practices to actions taken by defendants," finding that the expert's opinion is "not inherently unsound if he draws upon his experience and industry knowledge rather than a proven formula, surveys, or established data."); *Baldonado v. Wyeth*, 2012 WL 3234240, at *3–6 (N.D. Ill. Aug. 6, 2012) (denying *Daubert* challenge to expert who would opine on the standard of care in the pharmaceutical industry where expert "[brought] to bear her experience and training on the issue" and "repeatedly emphasized during her testimony that her opinions are not subjective, but are instead based on training and experience and having done the same process"); *Harms v. Lab. Corp. of Am.*, 155 F. Supp. 2d 891, 903–04 (N.D. Ill. 2001) ("[T]estimony on the general standards of care in the industry would come from [the expert's] professional knowledge... This is classic expert testimony."). Again, it is unlikely that any juror possesses the unique knowledge and experiences that Attorney Durocher could testify to concerning his experiences in building business relationship with Native American clients. Accordingly, Attorney Durocher's testimony is outside the realm of common knowledge and would assist the trier of fact in determining the facts at issue in this matter, *i.e.,* whether it was reasonable for Mr. DeQuattro to make political donations, upon request, in order to improve his company's potential opportunity for future business with either the Mashpee Wampanoag Tribe or other Tribes that Mr. Cromwell would be in a position to further rather than – as the Government claims – the only plausible reasons for the donations must be a *quid pro quo* bribes.

      Finally, to the extent the Government "quibble[s]" with Attorney Skip Durocher's background or the bases for his opinions, those challenges go to "weight and credibility" of testimony "not its admissibility." *McCullock v. H.B. Fuller Co*., 61 F.3d 1038, 1043 (2d Cir. 1995); *see also Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186

4

(2d Cir. 2001) ("to the extent that [defendant] asserts that there were gaps or inconsistencies in the reasoning leading to [expert witness's] opinion such arguments go to the weight of the evidence, not its admissibility"); *Ji v. Bose Corp.*, 538 F. Supp. 2d 354, 359 (D. Mass. 2008) (questions of reliability and credibility "are for the jury to decide").

For all of the foregoing reasons and the reasons detailed in Mr. DeQuattro's initial Opposition to the Government's Motion in Limine to Partially Exclude Defense Expert, the defense respectfully requests this Honorable Court to deny the Government's Motion in Limine and to admit the expert testimony of Attorney Durocher.

Respectfully Submitted,

**/s/ Martin G. Weinberg**
Martin G. Weinberg
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

Dated: October 8, 2021

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, October 8, 2021, a copy of the foregoing documents has been served via pacer on all relevant parties.

**/s/ Martin G. Weinberg**
Martin G. Weinberg