UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                            )<br>)<br>DAVID DEQUATTRO,                 )<br>          Defendant                   )<br>) | No. 20-CR-10271<br>Leave to File Granted on<br>December 22, 2022 |

**DEFENDANT DAVID DEQUATTRO'S SUR-REPLY REGARDING RESTITUTION**

**A.    The Government Has Made No Showing that the Tribe's Legal Expenses Were Caused by Mr. DeQuattro's Sole Offense of Conviction**

The government, even in Reply, utterly fails to address the Supreme Court's holding that restitution must be limited to "the loss caused by the specific conduct that is the basis of the offense of conviction" and that "a defendant who is charged with multiple offenses but who is convicted of only one offense" cannot be required "to make restitution for losses related to the other alleged offenses." *Hughey v. United States*, 495 U.S. 411, 412-13 (1990).  While the government criticizes the defendants for "trying to parse their bribery convictions from the counts of acquittal," that is precisely the analysis the caselaw requires.  Dkt. 323 at 7.  The complete absence of any attempt to establish that Mr. DeQuattro's provision of the Bowflex and hotel reservation to Mr. Cromwell, as opposed to the lawful campaign contributions for which he was acquitted and/or Mr. Cromwell's own unilateral conduct, was a but-for and proximate cause of the Tribe's claimed loss, in itself, dooms the restitution claim.  The government notably fails to cite a single authority for its contrary position.  Zeroing in on the specific counts of conviction, it is readily apparent that all of the subpoenas would have issued irrespective of Mr.

1

DeQuattro's conduct.  The government investigation was focused on Mr. Cromwell and his suspected misuse of Gaming Authority funds, as well as on political donations he received from Mr. DeQuattro and others.  Under *Hughey*, the foregoing is all beyond the scope of restitution.

Even if the court determines (over the defense objection) that the absence of a conviction for the donation-related conduct does not fully bar restitution as a matter of law, the expenses that can be individually assigned as both necessary and attributable to Mr. DeQuattro are very small.  Despite the defense raising this issue in its Opposition, neither the Tribe nor the government has sought to individualize the claimed expenses to one or both defendants, and the supporting invoices similarly fail to do so.[1]  To award the requested restitution without an individualized showing would infringe upon Mr. DeQuattro's Due Process rights.  *See Hughey*, 495 U.S. at 420 n.5 ("To order a defendant to make restitution to a victim of an offense for which the defendant was not convicted would be to deprive the defendant of property without due process of law." (quoting H.R. Rep. No. 99-334, p. 7 (1985)).

Nor has the Tribe provided revised invoices addressing the issue of block-billing.  For example, the government persists in claiming that a May 5, 2022 time entry including "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" was necessary.  R. Salguero Decl., Ex. B at 5/6/22.  It reasons that the same time entry included other tasks like "attending court for the verdict" and "notifying the Tribe."  Dkt. 323 at 14.  But this is precisely the issue caused by block-billing: even assuming, contrary to the defense argument, that such other tasks are compensable, there is no way to determine how "brief[]" the conversation thanking the

---

[1] *Cf. U.S. ex rel. Lovell v. AthenaHealth, Inc.*, No. 22-1246, 2022 WL 17829026, at *3 n.3 (1st Cir. Dec. 21, 2022) (affirming, in civil *qui tam* action, order applying "an across-the-board percentage reduction" in attorney fee award "because counsel had not distinguished between time spent on each claim," only one of which was within the statute).

prosecutors was. Accordingly, under authorities like *Chan* and *Avenatti*, the entirety of this entry must be disallowed. Other entries include time spent to protect the Tribe's own interests, rather than on tasks required by the government. *See* R. Salguero Decl., Ex. A at 7/13/20 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), 11/5/20 (review of "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"), 11/6/20 (analysis of "▮▮▮▮▮▮▮▮▮▮" regarding potential indictment of Mr. Cromwell, "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" and "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Similarly, many time entries include preparation for or attendance at Tribal meetings and/or other communications to Tribal members, akin to client relations. *See id.* at 6/17/20, 6/23/20, 6/24/20, 8/6/20, 8/17/20, 8/26/20, 8/28/20, 9/21/20, 11/4/20, 11/6/20, 11/9/20, 12/1/20, 12/2/20, 12/30/20; Ex. B at 6/9/21, 8/4/21. While it is certainly understandable why the Tribe might want its counsel to attend such meetings, there has been no showing that these expenses meet the strict definition of necessity required by the caselaw.[2]

**B.    Mr. DeQuattro Was Not Convicted of an Offense "Against Property"**

There was no evidence that Mr. DeQuattro's conduct was "directed[]" against anyone's property interest. *United States v. Collins*, 854 F.3d 1324, 1331 (11th Cir. 2017). More specifically, there was no hint that Mr. DeQuattro's providing a Bowflex or hotel reservation to Mr. Cromwell influenced the latter's decision-making in any respect, and particularly not to any economic disadvantage of the Tribe, nor that RGB failed to provide valuable services in exchange for the Gaming Authority's payments. This is, in short, the antithesis of *Razzouk* where the victim paid "for phantom work." Dkt. 323 at 3 (citation omitted). Instead, Mr. DeQuattro's conduct of conviction is reminiscent of that which courts have suggested does not

---

[2] Alternatively, the defense contends that the Court may decline to award restitution because of "complex issues of fact related to" causation that threaten to unjustifiably "complicate or prolong" sentencing. § 3663A(c)(3)(B).

trigger the statute.  *See* Dkt. 313 at 4 (citing *Collins* and *United States v. Adorno*, 950 F. Supp. 2d 426, 430 (E.D.N.Y. 2013)).[3]

The government cites no authority for its contention that bribery constitutes a crime "against property" so long as the bribe is "given in order to protect a property interest."  Dkt. 323 at 3.  Indeed, as discussed in Mr. DeQuattro's Opposition, the caselaw requires harm to another's property interest, not protection of such an interest.  This is a necessary implication of the statutory word "against."

The government suggests in a footnote that, if the Court rules for the defendant on this issue, it nonetheless should Order restitution under a different statute, not previously cited in any request for restitution by the Government or the Tribe.  *See* Dkt. 323 at 2 n.1 (citing 18 U.S.C. § 3663).  The government has waived any entitlement to restitution under this provision by (a) failing to mention the statute until its Reply brief and (b) failing, even in Reply, to develop any argument as to why the Court should Order restitution under the statute.

**C.     The Government Has Not Proven that the Tribe Suffered a "Pecuniary Loss"**

The element of "pecuniary loss," much like that of an offense "against property," is a threshold requirement to the applicability of "[t]his section," *i.e.*, 18 U.S.C. § 3663A, including the subsection permitting reimbursement of "other expenses," § 3663A(b)(4).  The latter subsection's preface "in any case" must self-evidently mean in any case subject to § 3663A.  *See United States v. Chan*, No. 16-CR-10268, 2019 WL 3975579, at *4 n.4 (D. Mass. Aug. 22, 2019) (describing § 3663A(b)(4) as applicable "in all cases *subject to the MVRA*" (emphasis added));

---

[3] The government's attempt to distinguish *Adorno* based on documentation of "the harm on which the restitution request [i]s based," *i.e.*, the legal fees and expenses, see Dkt. 323 at 3 n.2, misses the mark.  The existence of "an offense against property" is a threshold requirement to the applicability of § 3663A, including the subsection permitting recovery of "other expenses," § 3663A(b)(4).

*United States v. Yu Xue*, No. 16-CR-22, 2021 WL 2433857, at *4 (E.D. Pa. June 15, 2021) ("While the Government is correct that the MVRA provides for reimbursement of necessary expenses under § 3663A(b)(4) 'in any case,' the MVRA in its entirety only applies if the victim 'has suffered a physical injury or pecuniary loss.' Thus, despite the presence of the language 'in any case,' the fact that [the victim] suffered no pecuniary loss precludes application of § 3663A(b)(4)." (citation omitted)). Otherwise, restitution would be mandatory in any federal criminal case in which the victim incurs legal fees.

The statute also requires, on its face, that the "pecuniary loss" be suffered by "an identifiable victim or victims." 18 U.S.C. § 3663A(c)(1)(B). The word "victim" is, in turn, limited to "a person directly and proximately harmed as a result of the commission of an offense." § 3663A(a)(1)(2). Accordingly, courts have construed the statute to require that pecuniary loss follow as a direct and proximate result from the offense of conviction. *See, e.g.*, *Morillo v. Attorney General*, 751 F. App'x 335, 338 (3d Cir. 2018) (unpublished) (crediting government argument that "a court can order restitution only if it 'finds that an identifiable victim or victims has suffered a physical injury or pecuniary loss as a direct[] and proximate[] result of the offense.'"). This reading is consistent with explicit Congressional intent. *See* S. Rep. 104-179, p. 19 (1995) ("The committee intends this provision to mean . . . that mandatory restitution provisions apply only in those instances where a named, identifiable victim suffers a physical injury or pecuniary loss directly and proximately caused by the course of conduct under the count or counts for which the offender is convicted.").

Here, the government concedes that the Tribe's legal fees and expenses are an "indirect" pecuniary loss. Dkt. 323 at 4. This, in itself, is sufficient to place them outside the mandatory

restitution statute.[4]  This concession also distinguishes the two authorities relied upon by the government where the legal expenses found to constitute the requisite pecuniary loss were specifically described as the "direct" result of the defendant's conduct.  *See United States v. Kuruzovich*, No. 09-CR-824, 2012 WL 1319805, at *5 (S.D.N.Y. Apr. 13, 2012); *United States v. Avenatti*, No. 19-CR-373, 2022 WL 452385, at *7 (S.D.N.Y. Feb. 14, 2022).

**D.      The Claimed Legal Fees and Expenses Are Not Necessary "Other Expenses"**

The defense maintains that the statutory language "other expenses" should not be read to include hundreds of thousands of dollars in legal fees.  *See* Dkt. 313 at 8-11.  In arguing to the contrary the government relies in large part on pre-*Lagos* precedents, as well as cases from the Second and Sixth Circuits applying circuit precedent from before *Lagos*.  *See* Dkt. 323 at 9.[5]

Even assuming *arguendo* that attorneys' fees may be recoverable, they still must be **necessary**.  In *Avenatti*, the court denied the initial request for restitution "because of inadequate submissions from the Government and from Nike," and limited recovery to "investigatory activities that the government expressly and specifically invited or requested."  2022 WL 452385, at *3-4.  It found not recoverable fees for "[a]nalyzing court filings and engaging in motion practice," and "[a]ttending hearings and the trial" when Nike witnesses were not testifying, *id.* at *9, both of which are included in the restitution request here.  *Avenatti* also held that the court could not "attempt to extricate recoverable expenses from non-recoverable expenses in block-billing entries."  *Id.* at *10.  Ultimately, the court ordered restitution of

---

[4] The government's continued reliance upon the Tribe's decision to fire RGB is particularly problematic.  This is the epitome of an *in*direct result.  And the government neglects to mention that RGB agreed to forgo more than $87,000 in fees for work performed as part of its settlement agreement with the Tribe regarding these projects.

[5] To the extent the Court finds any statutory ambiguity on this issue, the rule of lenity requires it to be resolved in Mr. DeQuattro's favor.  *See Hughey*, 495 U.S. at 422.

approximately $260,000, down from an initial request of $1 million. *See id.* at *3, 11. *Chan* reflects a similar approach. *See* 2019 WL 3975579, at *5. As explained in the defense Opposition, Judge Talwani proceeded to exclude some of the same types of expenses at issue here. *See* Dkt. 313 at 15-17. Contrary to the government's representation, *see* Dkt. 323 at 14 n.8, the submitted bills reflect significant time entries for attendance at pre-trial interviews or "prep sessions" with witnesses. *See* R. Salguero Decl., Ex. B at 8/12/21, 4/15/22, 4/25/22.

### E. It Would Be Unfair to Hold Mr. DeQuattro Jointly and Severally Liable for the Full Claimed Loss Amount

Even assuming *arguendo* the Court imposes restitution, it should reject the government's request for joint and several liability. As this Court has already noted, this case involves a clear asymmetry in culpability. The government theory was that Mr. Cromwell pressured Mr. DeQuattro to make the gifts at issue, as well as campaign donations. While Mr. DeQuattro may have greater resources than Mr. Cromwell, his business has already been deeply burdened, and will continue to be, by the accusation and subsequent conviction. It would be unjust to require Mr. DeQuattro to be jointly and severally liable when so many of the legal expenses were focused on Mr. Cromwell[6] and where the evidence and counts of conviction so clearly distinguished the two defendants.[7]

Respectfully Submitted,

---

[6] The government has represented that the first subpoena sought no records related to RGB and the fourth was directed exclusively at Mr. Cromwell's emails. These subpoenas clearly would have issued irrespective of Mr. DeQuattro's conduct of conviction and expenses associated with them must therefore be excluded from any restitution award.

[7] The government also persists in its inaccurate characterization of Mr. DeQuattro's interview with Agent Crandall. As Mr. DeQuattro has already discussed at length, his statements were true and, in fact, demonstrated significant transparency. *See* Dkt. 262 at 10-11. It was Mr. DeQuattro who volunteered that his checks were for campaign contributions for Mr. Cromwell and who identified "Dino" although he did not recall the name Constantinos Mitrokostas six years after the first donations. In any event, Agent Crandall's testimony related exclusively to the donation counts, and the jury's acquittal of Mr. DeQuattro on all such counts belies the government's continued claim that he lied.

DAVID DEQUATTRO
By His Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 519480
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
owlmgw@att.net

**/s/ Michael Pabian**
Michael Pabian, Esq.
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
pabianlaw38@gmail.com

**/s/ Maksim Nemtsev**
Maksim Nemtsev, Esq.
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
menemtsev@gmail.com

Dated: December 30, 2022

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on this date, December 30, 2022, a copy of the foregoing document has been served via email on AUSA Wichers.

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
